Vern Mac **THOGMARTIN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 17143.

United States Court of Appeals
Eighth Circuit.

Feb. 5, 1963.

James Lawyer, Des Moines, Iowa, for appellant.

Donald A. Wine, U. S. Atty., Des Moines, Iowa, Leo E. Gross and Philip T. Riley, Asst. U. S. Attys., Des Moines, Iowa, on brief, for appellee.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

BLACKMUN, Circuit Judge.

Vern Mac Thogmartin appeals from a judgment entered upon a jury's verdict finding him guilty upon each of two counts of an indictment. These counts charged him, respectively, with the transportation in interstate commerce of securities of a value of more than $5,000, knowing them to have been stolen, in violation of the National Stolen Property Act, 18 U.S.C. § 2314,[1] and with unlawful conspiracy with Bernard Joseph Riley to commit that offense, in violation of 18 U.S.C. § 371.[2] A sentence of five years on each count was imposed. The sentences were to run concurrently. The usual motions for judgment of acquittal were denied.

The securities in question were twenty-three $1,000 face value bearer bonds of Southwestern Gas & Electric Company. They were the property of Business Men's Assurance Company of America, Kansas City, Missouri. The claimed transportation was from Kansas City to Des Moines, Iowa.

The defendant's claims of error here relate to (1) the sufficiency of the evidence; (2) the admission of the testimony of government witnesses Murphy and Kelly; and (3) the admission of government's Exhibit No. 1. We examine these in turn and recite the facts as each is considered.

▇ *The sufficiency of the evidence.* At this point we make the usual observation that this court, in considering the sufficiency of the evidence to support the verdict of guilty, must take that view of the evidence which is most favorable to the government and must accord the prosecution the benefit of all inferences which reasonably may be drawn in its favor. Bronzin v. United States, 8 Cir.,

1962, 309 F.2d 158, 160; Blauner v. United States, 8 Cir., 1961, 293 F.2d 723, 725, cert. den. 368 U.S. 931, 82 S. Ct. 368, 7 L.Ed.2d 193, and authorities cited in these cases.

The defense argument is that interstate transportation is an essential element of both counts of the indictment; that the record contains nothing as to the place of the claimed delivery of the bonds to the defendant; that there is no evidence that the defendant transported the bonds or caused them to be transported across a state line; that the only inference possible is that the bonds were delivered in Iowa where they were found; that the evidence at best identifies no more than five bonds as traceable to the Assurance Company; and that the value of these five bonds was less than the minimum amount specified in § 2314.

Mrs. Linda Robertson, 26, was a securities clerk for the Assurance Company. In June 1961 she went to her employer's safe deposit box in a Kansas City, Missouri, bank, and removed from it twenty-five Southwestern bonds belonging to her company.

Mrs. Robertson testified that she had known the defendant and his wife about seven or eight years; that shortly after she took the bonds she called Thogmartin and gave the bonds to him "to see if he could possibly get some money for them" as a favor to her; that at her request he later returned two of the bonds to her; that she then delivered one of these to Sike Simmons and the other to Roy Horage in Kansas City; that about mid-August she met Thogmartin at Simmons' tavern in Kansas City and asked for the return of the rest of the bonds; that the defendant said "they

---

1. Section 2314. "Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; * * * "Shall be fined not more than $10,000 or imprisoned not more than ten years, or both. * .* * "

2. Section 371. "If two or more persons conspire * * * to commit any offense against the United States, * * * in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. * * * "

were already in the possession of the FBI" and could not be returned; that Thogmartin told her he did not feel the person apprehended would involve him; and that the defendant operated a barbeque restaurant called the Hickory House or the Hickory Hut in Lee's Summit, Missouri, just outside Kansas City. On cross-examination Mrs. Robertson said that she took the bonds without authorization; that she borrowed $100 or $150 on the one delivered to Simmons; that she received no money from Horage for the bond she left with him but could not be sure about this; that she had been in a hospital and under the care of a psychiatrist; that she did not know whether she took the bonds to the defendant for the purpose of borrowing money from him or to have him borrow money from someone else; that she received several hundred dollars from Thogmartin a few days after she first talked with him about the bonds; that this had not been repaid; that she had repaid part of the money borrowed from Simmons; that her seeing Thogmartin was her own idea; that she was under no criminal charge with respect to the bonds; and that her husband was in financial difficulties at the time she took the securities. On redirect she said that she had told Thogmartin she obtained the bonds from her employer.

Bernita Jerry testified that she had a blind date with Paul Hoekstra in Kansas City on Saturday evening, August 5, 1961; that she also saw him there the next morning when they went out for coffee; that while they were at the coffee house Hoekstra made a telephone call; that as a result of that call Thogmartin joined them and she was introduced to him; and that she saw the defendant again that afternoon in Kansas City with his wife and with Hoekstra.

Maurice E. Murphy, special agent of the FBI, testified that he arrested Bernard Joseph Riley as he emerged from his room at the Holiday Inn Motel South in Des Moines, Iowa, on the morning of August 11, 1961; that Riley was then carrying a brief case; that the case contained 18 Southwestern bonds and a stenographer's notebook; that in Riley's possession at the time were a leatherette note pad and a broker's receipt from Dean Witter & Co., Des Moines, issued to Paul D. Hoekstra and describing "for sale" 5 Southwestern bonds with their serial numbers; that Riley's registration at the motel was in the name of Paul D. Hoekstra, Raytown, Missouri, and carried a time stamp of 8:04 p. m. August 9; that the leatherette note pad contained a business card of the Hickory House at Lee's Summit, Missouri, with Thogmartin's name printed on it; and that on the reverse side of the card, in handwriting, were the name and telephone numbers of a Kansas City, Kansas, lawyer whom Thogmartin later described as his attorney.

James J. Kelly, Jr., testified that he was a securities salesman for T. C. Henderson & Company of Des Moines; that on the afternoon of August 10, 1961, Riley came to his office with twenty-two $1,000 Southwestern bonds in bearer form; that Riley gave his name as Paul D. Hoekstra and offered identification as an employee of the Federal Bureau of Prisons; that Hoekstra said he had received these bonds from his parents and was trying to liquidate them in order to invest in a real estate opportunity presented to him; that the market was then closing; that they asked him to leave the bonds with them over night; that he refused to do this; and that the quote obtained for the bonds at that time was about 90. On cross-examination he said that he did not know of his own knowledge whether the bonds then offered to him were the identical ones which had been found in the brief case because he had not taken their serial numbers.

John Hall testified that he was a securities salesman with Dean Witter & Co.; that on August 10, 1961, Riley, using the name Paul D. Hoekstra, came to Hall's office and said he wanted to sell 5 Southwestern bonds; that Riley filled out a new account card and signed the Hoekstra name to it; that he gave

the Holiday Inn Motel South as his address; that he left the 5 bonds with the witness; that a receipt with the serial numbers of the bonds was given to Hoekstra; that Hoekstra did not come back; that the market value of the bonds at that time was approximately 93; and that the securities were eventually returned to the Assurance Company.

James A. Stewart testified that he was a university student employed at the Fleur de Lis Motor Hotel in Des Moines; that a registration card of that motor hotel disclosed the registration of James C. Rogers on August 9, 1961, and his check-out the following day; that the card carried an address in Lee's Summit, Missouri, and described the guest's automobile as a 1954 Chevrolet with Missouri license number X85-588; that the witness checked Rogers out on the morning of the 10th; and that Thogmartin was the man who checked out under the Rogers name. On cross-examination he testified that he was not at the desk when Rogers checked in; that, however, sometime before 5 p. m. on August 9 he had received a reservation by telephone from a person giving the name of Jim Rogers; and that he had not seen Thogmartin since August 10 or at any time prior to August 9. When asked to produce records for July 1, 1961, however, he was able to find a registration card at the same motor hotel in the name of Vern M. Thogmartin of Kansas City, Missouri, who arrived on July 1 in a party of two and who was checked out by the witness himself on July 3.

Lynn McDonald testified that he lived in Kansas City, Missouri, and was assistant treasurer of Business Men's Assurance Company of America; that he knew Mrs. Robertson; that he had custody of his company's securities and was in general charge of its securities records; that on August 14, 1961, it was ascertained that 25 of the company's Southwestern bonds had disappeared; that serial numbers on his list of stolen bonds coincided with those on the 18 bonds in Riley's brief case with one exception; that as to this one bond his list showed the number M9476, whereas the Riley bond possessed the number M7476; that 5 of the stolen bonds were the ones described by serial number on the Dean Witter & Co. receipt; and that Mrs. Robertson did not have permission to take the bonds. On cross-examination he conceded that his list had not been prepared by him personally; that it was compiled at his direction; and that he did not know who had prepared it.

The prosecution also placed in evidence authenticated copies of state documents showing that Missouri 1961 automobile license No. X85-588 for a 1954 Chevrolet had been issued to Vern M. Thogmartin of Kansas City.

This completed the government's case. The only defense witnesses, in addition to Stewart who was recalled, were Sike Simmons and Roy G. Horage.

Simmons testified that his residence and business were in Kansas City, Missouri; that Mrs. Robertson came to his tavern there and said she had to have some money; that she had a Southwestern bond with her which she said had belonged to her mother; that she offered to let him hold the bond as security for a loan; that he lent her $150; that this took place in July or August 1961; that two or three days later he learned she had taken the bond from the place where she worked; that he then returned it to her husband; and that his $150 had not been repaid.

Horage testified that he lived at Lee's Summit and was in the used automobile business in Kansas City; that he knew Mrs. Robertson; that he had a Southwestern bond in his possession in August 1961; that he received it from Mrs. Robertson; that she telephoned him and said her mother had left her some Southwestern bonds; that after he had inquired about these and received no adverse information, he told her that he would lend her $1,000 and hold one bond as security; that this was effected by her using a $1,000 payroll check he had; that she cashed that check; that he

called the Assurance Company and told them he had this bond in his possession; that they informed him the bond was missing from their vault and he could return it to Mrs. Robertson; and that later her bank refunded the $1,000 to him.

The transportation count. Mrs. Robertson in her testimony did not say specifically that her delivery of the 25 bonds to the defendant took place in Kansas City. It would have been helpful had there been testimony directly to this effect. She did say, however, that she delivered all the bonds to Thogmartin around July 1, 1961; that at her request he returned 2 to her; and that he was unable to return the other 23. Although she did not describe the place where this was done, her testimony centers in the Kansas City area: she was living there as a married woman; she had employment there; she met the Thogmartins at their wedding reception near Kansas City; she took the bonds from her employer's vault in a Kansas City bank; she delivered the 2 bonds to Simmons and Horage in Kansas City; she met Thogmartin at Sike's Tavern in Kansas City at the time she made her request for the return of the rest of the bonds; and she located Thogmartin's barbeque restaurant just outside Kansas City. The only mention of Iowa anywhere in the Robertson testimony is with respect to her appearance before the grand jury in December 1961.

Miss Jerry's testimony links Thogmartin with Hoekstra in Kansas City on August 6, 1961.

Murphy's testimony places 18 bonds in the brief case Riley was carrying when arrested at the Des Moines Holiday Inn on August 11. The Dean Witter & Co. receipt covers the delivery of 5 other bonds to them from Hoekstra on August 10. The motel's registration card fixes Hoekstra's appearance there on the evening of August 9. The testimony of Kelly and Hall identifies Southwestern bearer bonds with Riley in Des Moines on August 10 and reveals his attempts to dispose of these securities through brokerage houses in that city. It shows his use of the Hoekstra alias. Stewart's testimony places Thogmartin at the Fleur de Lis Motor Hotel in Des Moines on the evening of August 9 and his checkout the following day. It shows his use of the alias James C. Rogers. Stewart three times identified Thogmartin in the courtroom as the man Rogers. The evidence as to the Missouri automobile license number also links the defendant with his August 9 motel registration under the Rogers name. McDonald's testimony identifies the stolen bonds to include those in the possession of Riley and as those deposited with Dean Witter & Co. The testimony of Simmons and Horage reveals dealings in Kansas City between Mrs. Robertson and each of them. And the valuation evidence all shows the market of the bonds at 90 or above.

The foregoing does not embrace any direct evidence of transportation across the state line. It does include, however, direct evidence of Thogmartin's receipt of the bonds about July 1; of his being told they were taken from Mrs. Robertson's employer; of his being aware in mid-August that some of these bonds were in the possession of the FBI; and of his being certain that the person apprehended would not implicate him. There is also direct evidence of contact between Thogmartin and Riley in Kansas City on August 6, of Thogmartin's presence under an alias at a Des Moines motel the night of August 9, and of the presence of Riley under an alias in another Des Moines motel on the same evening. There is also supporting circumstantial evidence. Riley had possession of 23 of the bonds in Des Moines at the time. On his person was Thogmartin's business card. In his brief case was the stenographer's notebook on a page of which appeared the name of Thogmartin's alias.

▆▆ We are fully satisfied that all this adequately supports the jury's finding that the defendant transported, within the meaning of § 2314, securities having a value of more than $5,000 in

interstate commerce from Missouri to Iowa. It is not necessary that it be shown that this transportation was effected by the defendant personally. It is enough if the evidence justifies a conclusion that he was a motivating force in the transportation. Davis v. United States, 9 Cir., 1956, 237 F.2d 794, 795, motion for leave to file petition for certiorari and other relief denied, 352 U.S. 961, 77 S.Ct. 370, 1 L.Ed.2d 317; Walker v. United States, D.N.J., 1957, 154 F.Supp. 648, 650, aff'd, 3 Cir., 251 F.2d 616, cert. den. 357 U.S. 921, 78 S.Ct. 1362, 2 L.Ed.2d 1365. And, of course, 18 U.S.C. § 2[3] assures this. Pereira v. United States, 1954, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435; Nye & Nissen v. United States, 1949, 336 U.S. 613, 618–619, 69 S.Ct. 766, 93 L.Ed. 919; Mays v. United States, 8 Cir., 1958, 261 F.2d 662, 664; United States v. Koptik, 7 Cir., 1962, 300 F.2d 19, 22, cert. den. 370 U.S. 957, 82 S.Ct. 1609, 8 L.Ed.2d 823.

The defense would have us infer that because the motel records show Thogmartin's presence in Des Moines on July 1 to 3, 1961, and because Mrs. Robertson testified that her delivery of the bonds to Thogmartin took place in late June or early July, any delivery was effected in Iowa and thus the defendant had no part of an interstate transportation. This is a possible inference but it is one for the jury and not for us.

■ The conspiracy count. The foregoing conclusion as to the transportation count really makes it unnecessary for us to consider the evidence as to conspiracy. If Thogmartin was properly convicted upon either count of the indictment then, inasmuch as the sentence on each count is the same and is not more than the maximum allowable, the judgment must be affirmed. Wood v. United States, 8 Cir., 1960, 279 F.2d 359, 360; Bowen v. United States, 8

Cir., 1946, 153 F.2d 747, 748–749, cert. den. 328 U.S. 835, 66 S.Ct. 980, 90 L. Ed. 1611; Gantz v. United States, 8 Cir., 1942, 127 F.2d 498, 501, cert. den. 317 U.S. 625, 63 S.Ct. 47, 87 L.Ed. 505. Nevertheless, in this case we are willing to look also at the conspiracy evidence.

Nearly all of what we have said with respect to the evidence on the transportation count is equally applicable here. There are other items, too. The card in the leatherette note pad is that of Thogmartin's Hickory House. The handwriting on the card refers to the lawyer whom Thogmartin later described as his. The stenographer's notebook has the name James Rogers, defendant's alias, on one of its pages and contains a description of the Southwestern bonds and names of individuals, banks, and investment houses in Des Moines.

■■ There is thus evidence of contact between Riley and Thogmartin on August 6 in Kansas City after the latter had possession of the bonds; of Riley's having most of those bonds in his possession in Des Moines four days later; of the simultaneous presence of Riley and Thogmartin in Des Moines; although in separate motels, on the evening of August 9; of each registering under an alias; of Riley's efforts to sell the securities; of Thogmartin's awareness of the bonds' being in the hands of the FBI; of his certainty that the person apprehended would not implicate him; of Riley's possession of Thogmartin's business card; and of the appearance of Thogmartin's alias in Riley's notebook. Of course, here again not all of this evidence is direct; much of it is circumstantial. But "Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances.'" Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469,

3. Section 2. "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him would be an offense against the United States, is punishable as a principal."

86 L.Ed. 680; Blumenfield v. United States, 8 Cir., 1960, 284 F.2d 46, 53–54, cert. den. 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692; Isaacs v. United States, 8 Cir., 1962, 301 F.2d 706, 724–725, cert. den. 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed. 2d 58; Rizzo v. United States, 8 Cir., 1962, 304 F.2d 810, 825; Beatrice Foods Co. v. United States, 8 Cir., 1963, 312 F.2d 29. The evidence therefore was also amply sufficient to support the conspiracy count.

■ *The testimony of government witnesses Murphy and Kelly.* The defense argument here is that the admission of the testimony of the FBI arresting agent and that of the one securities salesman was improper and prejudicial because of the rule that there must be proof aliunde before the acts and declarations of an alleged conspirator not made in the presence of the defendant may be admitted. Glasser v. United States, supra, pp. 74–75 of 315 U.S., p. 467 of 62 S.Ct.; Minner v. United States, 10 Cir., 1932, 57 F.2d 506, 511; Beatrice Foods Co. v. United States, supra, p. 41 of 312 F.2d; Ong Way Jong v. United States, 9 Cir., 1957, 245 F.2d 392, 394–395. The rule, of course, is well recognized but it does not serve here to render the challenged testimony inadmissible. The government's case, aside from the testimony of Murphy and Kelly, contains sufficient other proof. Mrs. Robertson's testimony as to Thogmartin's receipt of the securities knowing them to have been stolen, as to his stated reason for not returning them, and as to his assurance of non-implication; Miss Jerry's testimony as to the defendant's Kansas City meetings with Riley; Riley's and Thogmartin's simultaneous presence in Des Moines; and their use of aliases supply that proof.

■ *Government's Exhibit 1.* This consisted of the 18 bonds which were in Riley's brief case when he was arrested in Des Moines on August 11. The defense challenge here rests on Mrs. Robertson's testimony that she could not positively identify the Exhibit 1 bonds because she did not know the serial numbers of the ones she had taken from her employer, and on McDonald's concession that he did not personally prepare his list of stolen bonds. It is suggested that the list was not a business record, admissible under 28 U.S.C. § 1732, but was merely a paper prepared for use at the trial.

The bonds were received in evidence during Murphy's appearance on the stand and before McDonald testified. The record does not disclose an appropriate objection to the McDonald testimony so as to preserve the point for the defense. But, in any event, Mrs. Robertson testified that the Exhibit 1 bonds were the same as those she had taken to Thogmartin and that two of the latter were returned to her and were then delivered, one each, to Simmons and Horage. The testimony of those two men tied these two bonds to the Assurance Company. McDonald duly identified himself as the assistant treasurer of the Assurance Company, as the custodian of its securities, as being in general charge of the records of those securities, and as being responsible to the vice-president in charge of investments. He described the 25 stolen bonds and testified that they were the only bonds taken from his company recently, that his list was prepared at his direction, and that 5 of the bonds described in the Dean Witter receipt were bonds that had been stolen and had been returned. We think it would be unrealistic, indeed, if, with this testimonial background, Exhibit 1 were to be deemed inadmissible. We approve the trial court's reception of the 18 bonds into evidence. Compare United States v. Riccardi, 3 Cir., 1949, 174 F. 2d 883, 889–890, cert. den. 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746.

There was thus adequate basis for the denial of the defense motions for acquittal. The judgment is affirmed.