**UNITED STATES of America**

v.

**Lewis MARCUS, Appellant.**

**No. 18484.**

United States Court of Appeals, Third Circuit.

Argued May 8, 1970.

Decided July 24, 1970.

---

Daniel E. Isles, Querques, Isles & Weissbard, Orange, N. J., for appellant.

George J. Koelzer, Asst. U. S. Atty., Newark, N. J. (Frederick B. Lacey, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before FREEDMAN, SEITZ and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This appeal arises from a December 23, 1969, judgment of conviction against the defendant, who was charged with having wilfully and knowingly pledged as security for a loan two stolen United States Government Bonds while they were moving in interstate commerce from New York City, New York, to Newark, New Jersey, in violation of 18 U.S. C. § 2315.[1] Also the indictment charged that defendant knew that the bonds had been stolen.

At the trial an officer of the National Newark & Essex Bank of Newark, New Jersey, testified that on the afternoon of April 30, 1969, the defendant obtained a loan from his bank in the amount of $12,000 by pledging as collateral the two

---

1. 18 U.S.C. § 2315 provides that:

"Whoever * * * pledges * * * as security for a loan any * * * securities * * * moving as, or which are a part of, or which constitute interstate * * * commerce, knowing the same to have been stolen, unlawfully converted, or taken; * * *

"Shall be fined * * * or imprisoned * * * or both."

Treasury Bonds mentioned in the indictment. As to one of the two securities involved, a representative of a brokerage house in New York City testified that he had last seen the bond on February 15, 1969, when a coupon was clipped from it for redemption. It was discovered missing on May 14, 1969 during a general company inventory. While the witness had no actual knowledge of how the bond had been removed from the office, he did state that between the two dates no one had authority to take, sell, or pledge the bond from the brokerage house. From his knowledge of the operation of the company, he concluded that the bond could not have been negligently misplaced and must have been stolen. As to the other security, a representative of a second brokerage firm in New York City testified that his company last knew of the bond's whereabouts on March 11, 1969, when it was included with other securities scheduled to be shipped that day to Boston. It was discovered missing in April of 1969. This witness also testified that while he did not have actual knowledge of what had happened to the bond, he did know that no one had authority to remove it from the Boston shipment.

Initially, the defendant asserts that the Government failed to prove two essential elements of the charge in the indictment: that the bonds were in fact stolen and that they were moving in interstate commerce at the time that defendant pledged them with the Newark bank. The record requires the rejection of these contentions since the evidence required the submission of these issues to the jury.

 Direct evidence of the theft of the bonds was not required.[2] The facts in this case are similar to those before the court in United States v. Rocco, 99 F.Supp. 746 (W.D.Pa.1951), affd. 193 F.2d 1008 (3rd Cir. 1952), where the defendant was charged with both transporting stolen goods in interstate

commerce (18 U.S.C. § 2314) and with selling goods stolen from interstate commerce (18 U.S.C. § 2315). The Government introduced evidence which tended to show that four groups of securities had "mysteriously disappeared" from four separate banks out of the state of Pennsylvania and that the defendant sold all or parts of each of these groups through financial institutions in Pennsylvania. In dismissing the defendant's contention that the evidence was insufficient to establish a theft, the court said:

> "The jury, if it believes the testimony of the witnesses for the prosecution, may draw whatever inferences the testimony of the witnesses reasonably tends to substantiate. The jury would have been naive indeed if it had found from the evidence that all four of these disappearances * * * were due to fortuitous circumstances instead of from theft, conversion, or fraud as charged." *Id.* at 748.

United States v. Rappaport, 312 F.2d 502 (2nd Cir. 1963), relied on by defendant, is inapplicable to the instant case. There the defendant was charged with the theft of goods moving in interstate commerce (18 U.S.C. § 659) and the evidence indicated that the theft had occurred at least a year before the transaction involving the defendant, who stood to gain little, if anything, from the pledging of the stolen securities there involved. Also, there was a serious question as to his possession of these securities. Such is not the case here, where Marcus clearly had possession of bonds recently removed from the premises of their rightful owners and where he benefited greatly from the transaction involved when he received the proceeds of the loan which the securities were used to secure. See Anderson v. United States, 406 F.2d 529, 533 (8th Cir. 1969).

2. United States v. Allegrucci, 258 F.2d 70 (3rd Cir. 1958); Gregory v. United States, 365 F.2d 203, 204 (8th Cir. 1966), cert. den. 385 U.S. 1029, 87 S.Ct. 759,

17 L.Ed.2d 676. See, also, Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

At the trial, the Government called Philip Dinitz as a witness who described his occupation to be that of arranging financing for various persons. He testified that Marcus contacted him at his office in Brooklyn, New York, and arranged a meeting with him on the morning of April 30, 1969, in Jersey City, New Jersey, during which Marcus asked for his aid in securing a loan with collateral which Marcus was to supply. At this meeting, Marcus gave Dinitz a list of securities which he had available to pledge and which he said had been bought by his father. This list (G–5) contained the serial numbers of the two bonds noted in the indictment. Dinitz then arranged an appointment for Marcus on May 2, 1969, when he and Marcus went to a bank in Brooklyn, New York, and attempted to negotiate a secured loan. At that meeting Marcus presented several Government bonds but he did not have with him the two bonds involved here, having pledged them in Newark, New Jersey, on the afternoon of April 30. We are of the opinion, and we so hold, that this testimony, when coupled with the evidence which established the relatively recent removal of the bonds from the offices of their owners in a state other than the state where the defendant pledged them, was sufficient to establish the interstate nature of the transaction as is required by the statute. While at some point all articles of commerce may cease to be part of an interstate shipment, all that is required under this and similar statutes is for the act prohibited to be part of a larger plan or scheme by which the goods are moved in an interstate manner. Thus, in McNally v. Hill, 69 F.2d 38 (3rd Cir. 1934), this court indicated, in interpreting what is now 18 U.S.C. § 2313 prohibiting, in language identical to § 2315, the sale or receipt of stolen vehicles, that:

"Plainly the statute contemplates a situation where the sale is an incident to something that has gone before, the 'final step' of several that have preceded it, such as theft and transportation and when the sale is so tied up with the interstate transportation in furtherance of the scheme unlawfully to dispose of the stolen vehicle and constitutes the last step thereof, the characteristic of interstate commerce is preserved and the federal jurisdiction for trying the offense of sale is maintained." *Id.* at 40.

The testimony of Dinitz that Marcus wanted to pledge the two bonds which are the subject of the indictment through a loan broker whose office was in New York with a New York bank was further evidence of the interstate nature of the transaction.

The most important of the defendant's contentions goes to the charge of the court. After reviewing the testimony of Philip Dinitz concerning his meeting with Marcus on the morning of the day on which he pledged the two bonds with the Newark bank and his subsequent meeting with Marcus two days later in Brooklyn, New York, when Marcus attempted to pledge several other securities, the court charged:

"I charge you, members of the jury, if you find beyond a reasonable doubt from the evidence in this case that the accused did the act charged in the particular count under deliberation, then the jury may consider evidence as to an alleged subsequent act of like nature in determining the state of mind or intent with which the accused did the acts charged in the particular count, and where proof of an alleged subsequent act of like nature is established which is clear and conclusive, the jury may draw therefrom the inference that in doing the act charged in the indictment under deliberation, the accused did act wilfully and with specific intent and not because of mistake or inadvertence or other innocent means."

This portion of the charge was specifically objected to by counsel for the defendant.

There was no evidence that the securities which Marcus attempted to

pledge in New York, two days after the transaction in Newark which is complained of in the indictment, were stolen. This language of the charge suggested to the jury that they could find that Marcus knew the securities he pledged in Newark were stolen by virtue of the fact that two days later he attempted to pledge securities which, so far as this record shows, were lawfully in his possession. In United States v. Stirone, 262 F.2d 571, 576 (3rd Cir. 1958), reversed on other grounds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), this court has pointed out the prejudicial nature of evidence of other crimes to show knowledge and intent, even when the commission of such crimes is conceded, using this language:

> "Certainly it [proof of the commission of other crimes] is probative to prove that the defendant in a criminal case is a man who commits crimes. This showing is strengthened by evidence that he has committed other crimes similar to the one with which he is now charged. The trouble is that while such evidence is probative it is highly prejudicial and a court or jury may find itself determining in general whether the defendant is a bad man rather than whether he committed a particular crime.

> " * * * Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime." [3]

This language in the charge was reversible error requiring a new trial.

The judgment will be reversed and the cause remanded for a new trial.[4]

---

3. In United States v. Prince, 264 F.2d 850 (3rd Cir. 1959), relied on by the Government, evidence of subsequent sales of narcotics was properly admitted to show that the defendant in that case had the necessary intent to violate a criminal statute prohibiting the sale of narcotics. Hence, the situation in that case was quite different from the facts in this record.

4. The above-described reversible error in the charge makes it unnecessary to discuss other alleged trial errors.