**UNITED STATES of America,**
**Appellee,**

v.

**Alfonso DAVIS, a/k/a Alphonso Davis,**
**Appellant.**

**No. 20383.**

United States Court of Appeals,
Eighth Circuit.

Dec. 10, 1970.

Jerry C. Estes, Fort Dodge, Iowa, for appellant.

Dennis D. Meridith, Asst. U. S. Atty., Sioux City, Iowa, for appellee.

Before MATTHES, Chief Judge, LAY, Circuit Judge, and REGISTER, Chief District Judge.

MATTHES, Chief Judge.

Alfonso Davis was charged by indictment and found guilty by a jury of violating 18 U.S.C. §§ 2 and 2314.[1] More

---

1. Section 2, sometimes referred to as the Aider and Abettor Statute, provides that whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal.

Section 2314, the National Stolen Property Act, prohibits interstate transportation of falsely made or forged securities, knowing them to have been forged or falsely made.

precisely, the indictment alleged that appellant, with unlawful and fraudulent intent, caused to be transported in interstate commerce from Webster City, Iowa to Dallas, Texas a forged money order in the amount of $100, knowing that it had been falsely made and forged.

Davis has appealed from the judgment of conviction.[2] The only substantial question for decision is whether a submissible case was made. Appellant contends that the evidence was insufficient as a matter of law to warrant the jury in finding that he had any connection with the movement of the money order in interstate commerce. From this premise, he argues that the district court erred in failing to grant his motion for judgment of acquittal.

In ruling the issue at hand, we take notice of the controlling law. Section 2314 requires transportation in interstate commerce of a forged security with fraudulent intent, and knowledge that such security was forged. Hulsey v. United States, 369 F.2d 284, 287 (5th Cir. 1966); see also Pereira v. United States, 347 U.S. 1, 9, 74 S.Ct. 358, 98 L. Ed. 435 (1954); Amer v. United States, 367 F.2d 803, 804 (8th Cir. 1966). In the language of Judge, now Justice Blackmun, "it is not necessary that it be shown that this transportation was effected by the defendant personally. It is enough if the evidence justifies a conclusion that he was a motivating force in the transportation. (Citing cases). And, of course, 18 U.S.C. § 2 assures this." (Citing cases). Thogmartin v. United States, 313 F.2d 589, 594 (8th Cir. 1963); see also Hall v. United States, 372 F.2d 603, 604 n. 1 (8th Cir.), cert. denied, 387 U.S. 923, 87 S.Ct. 2040, 18 L.Ed.2d 979 (1967). In determining whether a submissible case was made, we are required to review the evidence most favorable to the verdict and accord to the Government the benefit of all inferences which reasonably may be drawn in its favor. Kirschbaum v. United States, 407 F.2d 562 (8th Cir. 1969); Thogmartin v. United States, supra.

So tested, we have no difficulty in concluding that the evidence presented an issue of fact and that the conviction finds support in the record.

The salient facts are: In December of 1969, 183 blank money orders drawn on the Republic National Bank of Dallas, Texas and bearing serial numbers 12217318 through 122187500 were stolen at gunpoint by a Negro male from the manager of a supermarket in Minneapolis, Minnesota. The manager made an in-court identification of appellant as the party who committed the robbery. It should be noted, however, that upon cross-examination he equivocated slightly as to the identity, but concluded he was reasonably sure that appellant was the holdup man.

The scene then shifts to Webster City, Iowa. Mrs. Lockwood, who was a cashier at Gibson's Discount Store in that city, testified that on the evening of January 3, 1969 she accepted the money order in the amount of $100, which is the subject of this prosecution. It bore No. 12217367, was payable to Perry H. Jenks, and the name of the sender was Marry Ann Jenk. It is undisputed that this instrument was one of those stolen from the supermarket. It was tendered to Mrs. Lockwood in payment of approximately $5.00 worth of merchandise by a Negro male, about six feet in height and weighing about 200 pounds. Upon presentment, he endorsed the name of Perry H. Jenks on the back of the money order and offered for identification a driver's license in that name. Mrs. Lockwood wrote the number and birth date appearing on the license on the back of the cashed instrument. Although Mrs. Lockwood did not positively identify appellant in court, she stated that the person who cashed the money

---

2. Judge Hanson sentenced Davis to five years imprisonment with parole eligibility under 18 U.S.C. § 4208(a) (2) and directed that the sentence be served concurrently with the state sentence he was then serving.

order was of appellant's general description.

Perry H. Jenks, to whom the driver's license had been issued, testified that the signature on the money order was not his, that he had either lost the license or it had been stolen from him in December of 1968 in Minneapolis, and that the number and birth date on the back of the money order corresponded to that recorded on his driver's license.

At about 7:00 p. m. on the same evening that the money order was cashed at Gibson's Discount Store, the owner and operator of a men's clothing store in Webster City, Iowa was confronted by two Negro men who undertook to purchase some merchandise from him. One of them presented a money order for $100 and, when the owner of the store refused to accept it, both of the prospective purchasers left. Thereupon, the owner contacted the police of Webster City by telephone and alerted them to what had transpired in his place of business.

Two members of the police force of Webster City testified to the effect that at approximately 7:30 p. m. on the evening of January 3, 1969, they stopped a 1960 Oldsmobile automobile bearing an Illinois license plate AB6577. The automobile was occupied by two Negro males. Although the police officers were unable to identify appellant in court as being the occupant of the automobile, both officers stated that the occupants presented driver's licenses, one issued to James Wheeler, the other to James Hill.

A Minneapolis police officer testified that he had occasion to stop appellant in Minneapolis on January 19, 1969, and that he presented for identification an Illinois driver's license issued to James Wheeler.

On January 24, 1969, an F.B.I. agent interviewed appellant and obtained a statement from him which was reduced to writing and signed. He also procured from appellant handwriting exemplars of various signatures. All proper warnings were given to Davis before he was interviewed and no question is raised here as to voluntariness of the statement. In pertinent part, the statement reads:

"When I got out of the hospital, I was approached at my apartment at 26 Oak Grove by a man known to me as Felix Morrisie, a Negro male, about 30 years old, 6′ 3″ tall, weighing 200 pounds, black hair and a light complexion.

"Morrisie knew I had a drivers license and other identification of James Boyd Wheeler which I was using to drive in Minnesota. * * *

"Felix Morrisie had a lot of money orders with him. I knew they were illegal.

"I do not know Morrisie's real name.

"Felix bought a check machine using the name on my driver's license, James Wheeler.

"Felix also came to me because he knew I needed money because I couldn't work, because my arm was stiff because of all the shots I got in the hospital.

"I drove Felix Morrisie and Tom Conway in my brother's car. My brother's name is Alvis N. Davis. His car is a 1960 Oldsmobile with Illinois license AB6577.

"We drove to Detroit, Michigan; Chicago, Illinois; Sioux City, Iowa; Ft. Dodge, Iowa; Windsor, London, and Toronto, Canada.

"That is the only way I am involved with the illegal money orders."

Another agent of the F.B.I., an eminently qualified document examiner of many years experience, testified unequivocally that the signature "Marry Ann Jenk," appearing on the forged money order, was written by the same person who had signed the statement above quoted, namely, Alfonso Davis. Appellant's experienced and skillful counsel fully cross-examined the docu-

ment expert, but was unable to undermine his testimony.

Thus, in summary the evidence, although circumstantial, was sufficient for the jury to find: (1) a Negro male with an Illinois driver's license issued to James Wheeler, was driving a 1960 Oldsmobile bearing an Illinois license plate AB6577 in Webster City, Iowa approximately an hour after the subject money order had been cashed at the discount store in Webster City by a Negro male answering the description of appellant, (2) appellant admitted that he drove a 1960 Oldsmobile bearing the same license number in Sioux City and Fort Dodge and that he possessed an Illinois driver's license in the name of James Wheeler on that trip. Fort Dodge is at short distance west of Webster City, and both are on the same main highway, (3) appellant was apprehended in Minneapolis two weeks after the money order was cashed and he presented for identification the Illinois driver's license issued to James Wheeler, (4) appellant admitted in his statement that he had been in Iowa with another Negro male and admitted that they were carrying stolen money orders, (5) the F.B.I. handwriting expert testified that the signature of the "sender" of the money order (Marry Ann Jenk) had been written by appellant, (6) there is uncontradicted testimony from a bank official in Dallas, Texas that the money order, after being passed through regular banking channels, was presented to that bank for payment. Acting upon instructions previously received, the bank refused to honor the money order.

█ From all of the foregoing, we hold that the evidence was adequate for the jury to find that appellant was guilty as charged in the indictment.

Appellant also contends that the district court erred in failing to dismiss the case for lack of jurisdiction of the subject matter and because venue was not in the United States District Court for the Northern District of Iowa. This assertion is again premised on the theo-

ry that there is not competent proof to show that appellant was in Webster City, Iowa. In developing this point, it is claimed that even though appellant admitted that he and another person had stolen money orders with them when they left Minneapolis, the evidence failed to disclose that appellant committed accessorial acts in Minneapolis which had a causative relationship to the commission of the offense which was initiated in Webster City. The Government did not try to prove, and it is not argued on appeal that appellant committed an accessorial act in Minneapolis in any way relating to the forging and cashing of the money order in Iowa. This portion of appellant's argument is wholly irrelevant.

█ The district court for the Northern District of Iowa clearly had jurisdiction over the subject matter of the crime as the interstate transportation of the stolen money order began and was caused by the cashing of it in Webster City, Iowa. Title 18 U.S.C. § 3237 affords a conclusive answer to this allegation and provides in pertinent part:

"(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves."

The venue issue turns on the question of whether appellant was present in Webster City, Iowa on January 3, 1969, when and where the offense was begun. Our discussion of the evidence in disposing of appellant's first and basic conten-

tion of error is dispositive of the venue issue.

In conclusion, appellant was represented by competent counsel, he received a fair trial, and his conviction was responsive to adequate evidence.

Affirmed.