**UNITED STATES of America, Appellee,**

v.

**Gerald Lemarr FRYE, Appellant.**

**No. 76–1680.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1976.
Decided Feb. 8, 1977.

766

David J. Isaacson, Des Moines, Iowa, for appellant.

John M. Fitzgibbons, Asst. U. S. Atty., Des Moines, Iowa, for appellee; Allen L. Donielson, U. S. Atty., Des Moines, Iowa, on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

Gerald Lemarr Frye appeals from his conviction for causing a falsely made and forged security to be transported in interstate commerce in violation of 18 U.S.C. § 2314. Frye argues that the trial court erred in denying his motions for acquittal and in denying his motion for a new trial based on newly discovered evidence. He also argues that evidence obtained during a search of his impounded automobile should have been suppressed. We affirm.

On September 23, 1975, a teller at the American Federal Savings and Loan Association of Des Moines, Iowa, was approached by a man who indicated to her that he wished to cash a check in the amount of $1,945, deposit $445 of this amount into his account and receive $1,500 in cash. The check was written on the account of Edward F. Cardwell at the First National Bank of Denver and was payable to Marvin F. Swanson. After checking the endorsement against Swanson's signature kept in bank files, the teller accepted the check and the accompanying deposit slip on which Swanson's name and account number had been written. After receiving the cash requested, the customer left the bank.[1] The check was returned unpaid by the Denver bank because Cardwell had reported his checkbook to be missing and believed to be

---

1. The teller testified at trial that this man was about six feet in height and weighed between 165 and 180 pounds. When asked by defense counsel if the defendant was that man, she replied that he was not.

stolen in the latter part of the summer of 1975. Neither Cardwell nor Swanson had been aware of the transaction.

Later that day, the Iowa Highway Patrol was called to the scene of an automobile accident near Iowa City. Upon their arrival, they observed a vehicle in a ditch and three men fighting on the shoulder of the highway. These men were Ronald Rhone,[2] Jerome Ruffin and the appellant, Gerald Lemarr Frye. When asked about the cause of the fight, Ruffin stated that Rhone had a lot of money and the others thought it was time to split it up. Rhone stated that he had been hit with a gun which had been thrown in the weeds nearby. The troopers searched for the gun but were unable to locate it. The three men were arrested for fighting on a public highway and transported to Johnson County Jail. The automobile, owned by Frye, was impounded.

After the men were taken to jail, the troopers returned to the scene and conducted a further, but again unsuccessful, search for the gun. One of the troopers testified that he then went to Frye's cell, informed him that they were unable to locate the gun, and asked his permission to search his automobile, which he gave. Frye denied that he gave any consent to search the car at the pretrial suppression hearing. During the subsequent search of Frye's automobile, the stolen Cardwell checkbook, a false Social Security card in the name of Edward F. Cardwell, an item entitled "Duplicate Iowa Driver's License" bearing the name of Edward Cardwell but with a picture of Frye, several Xerox copies of withdrawal slips from American Federal, and a sheet of paper on which someone had repeatedly written the name of Marvin Swanson were found in the trunk. Frye's fingerprints

were later found on the Cardwell check and accompanying deposit slip used in the American Federal transaction.

The defense theory was that Rhone,[3] acting without Frye's knowledge or prior participation, cashed the Cardwell check. Frye did not testify at trial. Edmundson Gilbert testified that Rhone, Ruffin and Frye were friends and had been staying for several weeks at the Franklin Hotel in Des Moines. On the morning of September 23rd, he overheard Frye and Ruffin talking about "fighting" Rhone because of money of theirs which Rhone had lost in gambling debts. Gilbert, wanting to avert a fight, offered money to Rhone which Rhone refused, saying that he had money but did not want the other two to know. Later that day, Gilbert took Rhone to a pawn shop where he redeemed jewelry which he previously had pawned. After leaving the pawn shop, Gilbert and Rhone ran into Frye and Ruffin who were preparing to leave town without Rhone. After some discussion, Rhone left Des Moines with the other two.

I.

■ Frye's first contention is that the evidence was insufficient to support his conviction either as a principal or as an aider and abetter in the check cashing transaction.[4] Frye contends that although the evidence might imply that he had knowledge of the scheme, it does not support the inference that he in any way participated in the criminal transaction.

■ In considering a motion for acquittal, the verdict of guilty must be sustained if, viewing the evidence in the light most favorable to the government together with all reasonable inferences therefrom, there is substantial evidence to support it. *United*

2. Ronald Rhone died before the trial was held.

3. Rhone was described as approximately six feet one inch tall and weighing about 165 pounds.

4. Frye also contends that the trial court's submission, at the government's request, of an aiding and abetting instruction to the jury was erroneous because Frye was not specifically charged in the indictment as an aider and abet-

ter. This contention is without merit. It is well established that a person may be convicted as an aider and abetter even though he is not charged in that capacity. *United States v. Thomas,* 469 F.2d 145, 146 (8th Cir. 1972), *cert. denied,* 410 U.S. 957, 93 S.Ct. 1429, 35 L.Ed.2d 690 (1973); *United States v. Lugo-Baez,* 412 F.2d 435, 440 (8th Cir. 1969), *cert. denied,* 397 U.S. 966, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970).

*States v. Green,* 525 F.2d 386, 393 (8th Cir. 1975).

▓ Although the evidence may have failed to establish that the transportation of the check in interstate commerce was personally effected by Frye, there was ample evidence to support his conviction for violation of 18 U.S.C. § 2314 on the theory that he aided and abetted the transaction. *See United States v. Davis,* 434 F.2d 1108, 1109 (8th Cir. 1970); *Thogmartin v. United States,* 313 F.2d 589, 594 (8th Cir. 1963). In *Johnson v. United States,* 195 F.2d 673, 675 (8th Cir. 1952), this Court stated:

Generally speaking, to find one guilty as a principal on the ground that he was an aider and abetter, it must be proven that he shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act is committed. As the term "aiding and abetting" implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed. It implies some conduct of an affirmative nature and mere negative acquiescence is not sufficient.

*United States v. Jarboe,* 513 F.2d 33, 36 (8th Cir. 1975), *cert. denied,* 423 U.S. 849, 96 S.Ct. 90, 46 L.Ed.2d 71 (1976). Identification or conviction of the principal is not necessary in order to sustain a conviction of an aider and abetter. *United States v. Untiedt,* 493 F.2d 1056, 1060 (8th Cir.), *cert. denied,* 419 U.S. 862, 95 S.Ct. 115, 42 L.Ed.2d 98 (1974); *Pigman v. United States,* 407 F.2d 237, 239 (8th Cir. 1969). It is necessary to show only that an offense was committed by a principal and that the principal was aided and abetted by the defendant. *Id.*

In this case, the cashing of the stolen check, and its subsequent transportation in interstate commerce, was established. Although the identity of the individual who cashed the check is unknown, the jury could reasonably infer Frye's familiarity with the planned transaction from the presence in his automobile of the stolen checkbook, false identification cards including one in the name of Edward Cardwell and carrying Frye's picture, Xerox copies of withdrawal slips from the bank where the check was cashed, and a sheet of paper on which someone appeared to have been practicing writing the name of Marvin Swanson. *See Hendrix v. United States,* 327 F.2d 971, 975 (5th Cir. 1964). This evidence, together with the presence of Frye's fingerprints on the very check and deposit slip used to complete the transaction, support the inference of his affirmative participation in the criminal enterprise. *See United States v. Pigg,* 471 F.2d 843, 848 (7th Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). We find the evidence, although circumstantial, sufficient to convince the jury of the defendant's guilt beyond a reasonable doubt. *See United States v. Diggs,* 527 F.2d 509, 512 (8th Cir. 1975); *United States v. Shahane,* 517 F.2d 1173, 1177 (8th Cir. 1975), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1976).

## II.

Frye next contends that the testimony of Jerome Ruffin, now available, is newly discovered evidence entitling him to a new trial because of the government's negligent failure to locate Ruffin prior to trial despite repeated defense requests.[5] We have carefully considered this claim and conclude that the motion for a new trial was properly denied.

The heart of Frye's new trial motion is his belief that Ruffin's testimony, as indicated by his affidavit, would have bolstered the theory of the defense that Rhone cashed the Cardwell check without Frye's knowledge or participation. In support of this position, Frye cites those portions of the affidavit stating that prior to the day the three were arrested, Rhone attempted to borrow money from the others and pawned

---

**5.** From February, 1976 until June 16, 1976, the day after Frye's trial was completed, Ruffin was apparently in the custody of the State of New Jersey. The government claims that despite that fact, communications with various state and local agencies, parole and probation officers in an attempt to locate Ruffin were unavailing.

his possessions; that on the day they were arrested, Rhone redeemed the pawned items and told Ruffin that he had "knocked off some big money that morning but didn't want Jerry [Frye] to know;" that after some fighting among the parties, Ruffin took a sum of money from Rhone which he then split with Frye; and that, in his opinion, Frye had no knowledge of the cashing of the check. Frye also claims that the statement in the affidavit, that at no time does he recall any trooper asking Frye's permission to search the automobile, is newly discovered evidence bearing upon the issue of Frye's consent.

■ Before a new trial on the ground of newly discovered evidence can be granted, each of the five conditions must be met: (a) The evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant;[6] (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal. *Johnson v. United States,* 32 F.2d 127, 130 (8th Cir. 1929). *United States v. McColgin,* 535 F.2d 471, 476 (8th Cir. 1976).

■ The new evidence, however, is merely cumulative and impeaching and would not be sufficient to produce Frye's acquittal. The theory of the defense, placing all responsibility for the crime on a dead man, was submitted to the jury. The thrust of Ruffin's affidavit, that Rhone had apparently been without money and that, on the same day that the Cardwell check was cashed, he had money which he wanted to keep from the others, is little more than a restatement of Gilbert's testimony. Frye concedes that Ruffin's affidavit contains no mention of the Cardwell check cashing be-

cause Ruffin had no knowledge of the transaction. Ruffin's statement that, in his opinion, Frye had no knowledge of the transaction is merely a bald assertion without adequate evidentiary support. *See McCroskey v. United States,* 339 F.2d 895, 897 (8th Cir. 1965). Similarly, Ruffin's statement that, to his knowledge, Frye gave no consent to the search of the car is cumulative of Frye's testimony at the pretrial suppression hearing. The trial court's denial of Frye's motion for a new trial was not an abuse of discretion. *See United States v. McColgin, supra* at 476; *United States v. Running,* 506 F.2d 1068, 1073 (8th Cir. 1974); *United States v. McWilliams,* 421 F.2d 1083, 1085 (8th Cir.), *cert. denied,* 397 U.S. 1070, 90 S.Ct. 1515, 25 L.Ed.2d 694 (1970).

Frye urges, however, that because of the government's negligent failure to locate Ruffin, the test to be applied here is not whether the newly discovered evidence would probably produce an acquittal, but rather whether there is a significant chance that the new evidence, developed by skilled counsel, could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction. *See United States v. Rosner,* 516 F.2d 269, 272 (2nd Cir. 1975); *United States v. Miller,* 411 F.2d 825, 832 (2nd Cir. 1969). Even under this lesser standard, the test of materiality has not been met.

### III.

Frye's final contention is that the trial court erred in denying his motion to suppress the evidence obtained during the warrantless search of his impounded automobile. Frye contends that he gave no consent to search the car; that even if this Court finds that such consent was given, it was not voluntary; and that, in any event, the scope of the search exceeded that of the alleged consent.

---

**6.** It is questionable whether sufficient diligence to secure the presence of Jerome Ruffin at trial has been shown by the defense. Although Frye's counsel states by way of affidavit that numerous requests of the government for the production of Ruffin were made, no subpoena was requested nor was a request made for a continuance to enable the defense to locate the witness. *See United States v. McColgin,* 535 F.2d 471, 476 (8th Cir. 1976); *United States v. Young,* 426 F.2d 93, 95 (6th Cir.), *cert. denied,* 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970).

■ At the pretrial suppression hearing, a state trooper testified that Frye gave his consent for the search of the automobile. Frye testified that he did not. The trial court chose to believe the trooper and denied Frye's motion to suppress. We accept the trial court's determination of credibility. *Mullins v. United States*, 487 F.2d 581, 589 (8th Cir. 1973).

■ Frye's second argument that his consent, if given, was the product of coercion is without merit since the only evidence of coercion cited by Frye is the fact of incarceration at the time his consent was obtained. This fact, standing alone, is not enough. *See United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).

■ Frye's argument that the scope of the search exceeded that authorized by his consent is likewise without merit. The finding of the trial court that Frye's consent was not limited by the trooper's statement to him that the purpose of the search was to locate the missing gun is not clearly erroneous.

The judgment of conviction of the trial court is affirmed.