**Curtis Harold LINK, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17722.**

United States Court of Appeals Eighth Circuit.

Nov. 2, 1965.

208

Curtis Harold Link, pro se.

Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., and John A. Newton, Asst. U. S. Atty., for appellee.

Before JOHNSEN, VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellant was found guilty by a jury in 1960 of violating 18 U.S.C. § 2113(a), [entering a bank with intent to commit

larceny], and was sentenced to imprisonment for a term of eleven years. The sentence was imposed in May, but no attempt was made to file a notice of appeal from the judgment of conviction until in August, so that the appeal had to be dismissed by us for want of jurisdiction. It also appeared that the appeal would in any event have been frivolous. Link v. United States, 8 Cir., 287 F.2d 566.

Thereafter, in 1961, appellant sought to have the sentence vacated by a motion under 28 U.S.C. § 2255. The District Court denied the motion on its face, and we dismissed the appeal taken from the order as frivolous. Link v. United States, 8 Cir., 295 F.2d 259, cert. den. 368 U.S. 1003, 82 S.Ct. 638, 7 L.Ed.2d 542.

Appellant filed another motion under § 2255 in 1964. The District Court made denial of this motion also without a hearing, on the ground that the record showed that the attack made was without any basis or substance. There is before us now the appeal taken from this order of denial.

 The first contention made by the motion was that the indictment was so defective as not to charge an offense under 18 U.S.C. § 2113(a), and hence to be unable to support the conviction against appellant. In its here pertinent provision, § 2113(a) makes it an offense for any one to enter a bank, in federal legal domain, "with intent to commit in such bank * * * any felony affecting such bank * * * or any larceny". The charge as set forth in the indictment was that appellant and three other named defendants had entered "the State Bank of Jonesburg, Jonesburg, Missouri, a banking institution organized according to law, the deposits of which are insured by the Federal Deposit Insurance Corporation, with the intent to commit therein a felony, to-wit larceny on said bank".

The effect of appellant's argument is that, as an element of offense, the term "larceny on said bank" was so ambiguous as not to make it possible for him to know whether the charge was one of entering the bank with intent to engage in larceny of property "belonging to some private citizen" or larceny of property belonging to or in the custody of the bank.

We do not believe that there would be conveyed to one reading the indictment any other thought initially than that the charge of having entered the bank with intent to commit larceny "on said bank" was a charge of intent to commit larceny from or against the bank. Only an attempt at legalistic diversion from what the charge would naturally impress as meaning, to what the phrase "larceny on said bank" might abstractly have capacity to mean, could give rise to appellant's contention. But we are unable to see any room to even argue the abstraction in view of the complementing delineation in the concluding clause of the indictment that the offense charged was one that constituted a violation of 18 U.S.C. § 2113(a).

Assuming, however, that it might have been possible for appellant, prior to his giving recognition to the indictment for trial purposes, to have made objection to the charge as comprehending both intended larceny against the bank and intended larceny against a third person, any such duplicity would not remain open to him in a § 2255 attack. The larceny proved on the trial was of property belonging to or in the custody of the bank, and since the term "larceny on said bank" was in any event broad enough to cover this aspect, the indictment was sufficient legally to support the trial had, submission made, and conviction returned on that basis.

An indictment, not questioned at trial or on direct appeal, is not open to attack by motion under § 2255, unless it is so obviously defective as not to be capable by any reasonable construction of being said to charge the offense on which conviction was had. Palomino v. United States, 9 Cir., 318 F.2d 613, 616; United States v. Koptic, 7 Cir., 300 F.2d 19, 22. Imperfections or deficiencies in an indictment which are merely technical, in that they do not cause it to be without

charge of an offense and have not prejudiced the accused in a trial for such offense, do not afford basis for reversal of or collateral attack upon a conviction therefor. Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 996, 3 L.Ed.2d 1041.

The second contention of appellant's motion was that the United States Attorney had used testimony which he knew to be perjured and which he did not undertake to correct, and that the conviction therefore was invalid for violation of due process.

Challenge is made first against some testimony on the part of a co-defendant named Enloe, who had pleaded guilty, and of an FBI agent named Bock. Both of them testified on direct examination that no promise had been made to Enloe in relation to his pleading guilty and agreeing to testify against appellant. On cross-examination, Enloe admitted that he had asked Bock whether, if he pleaded guilty, "I could get a sentence to run [concurrently] with my twenty-five"—a term then being served by him in the Iowa State Penitentiary. He further stated that Bock had replied that "he didn't know, but he would talk to the Attorney General [United States Attorney?] and would ask him * * * what I could do". Enloe admitted that it had been suggested to him "that if I plead guilty, I wouldn't hurt myself", but he added that he had not been influenced by any part of his conversation with Bock, because he had had 15 years of experience in talking to FBI agents and state police, "and it never influenced me". When asked directly whether he was expecting to get a concurrent sentence, he answered, "I am not expecting it, I am hoping".

Bock also, as indicated above, testified on direct examination that there had been no promise made by him to Enloe. He went on to state that Enloe had inquired whether, if he pleaded guilty, the sentence would run concurrently with his Iowa sentence; that he answered Enloe that he could not promise anything but would discuss the matter with the United States Attorney; that he did discuss the matter and thereafter had another conversation with Enloe; but that, again, he did not make any promise of any nature to Enloe. Appellant's counsel had been given possession, pursuant to the Jencks Act, 18 U.S.C. § 3500, of Bock's report from the FBI files, and on cross-examination he brought out that the report indicated that Bock had told Enloe that he "would forward (Enloe's) desires to the proper authorities", with Bock repeating, as he had stated on direct examination, "We told him we would discuss it with the United States Attorney".

Both Enloe and Bock further testified that Enloe had also inquired as to the possibility of getting a detainer lifted, which had been lodged by the authorities of St. Louis County, Missouri against him at the Iowa State Penitentiary on another offense, and both of them stated that Bock had replied that this was a matter for the state authorities.

The effect of appellant's argument is that Bock's statement to Enloe, as indicated by his FBI report, that Enloe's "desires" would be discussed with the "proper authorities" amounted to a promise; that when Enloe and Bock testified that there had been no promise made they therefore were perjuring themselves; that the United States Attorney was accordingly using perjured testimony; and that when he failed to correct the situation by making Enloe and Bock admit that they had thus given false testimony or by himself avowing before the jury that such was the case, the conviction of appellant was one in which violation of the due process had occurred.

■ A conviction that is tainted by a knowing use of false evidence to persuade of guilt is one as to which there has been a violation of due process. Napue v. People of State of Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217. The same is true as to a situation of false evidence which, though not solicited, has been knowingly allowed to go uncorrected after it appears. Ibid. And the taint has been held to extend also to situations of use of or failure to correct false testi-

mony by a witness in elements having relation only to his credibility but appearing to be of capacity to affect the reliability of his substantive testimony. Ibid.

These aspects of prosecution go to the honor and integrity of the sovereign's administration of justice. They are beyond the forensic margins of trial contest, because they are subversive of the institution of fair trial itself. The Supreme Court has termed them a pollution of the waters of justice. Mesarosh v. United States, 352 U.S. 1, 14, 77 S.Ct. 1, 8, 1 L.Ed.2d 1.

█ The principles which have been stated are, however, without application to the present situation. All the aspects of what had been said between Enloe and Bock were vigorously brought out before the jury, so that it was afforded full opportunity to appraise whatever implications could be argued to be inherent in the conversation and whatever significance this might have had upon Enloe's substantive testimony.

Enloe's and Bock's insistence that there had been no promise made in respect to concurrent sentence and state-detainer release, or attempt to induce reliance by Enloe that any such benefits would be forthcoming, as opposed to appellant's insistence that Bock's statement to Enloe that he would "talk" to or "discuss" the matter with the United States Attorney was in itself such a promise or inducement, would seem to constitute merely a difference in view or interpretation as to the nature and object of the conversation. But however that might be, with full development having been made of what the conversation and its circumstances had been and with the jury thus being placed in a position to engage in its own evaluation of the significance and effect thereof on the basis of regular competence and traditional function, the situation consisted of nothing more than one of conventional trial channel and incident. There was no subversion of the institution of fair trial from a use of testimony which had the capacity to pollute and a withholding of facts in relation to it which could prevent proper assessment from being made of its value.

█ What has precedingly been said is applicable also to appellant's contention that there was other perjured testimony affective of Enloe's credibility, falling within the ban of the principles above set out. This involved Enloe's denial on cross-examination that he had originally named two other individuals, and not the charged defendants, as the persons who had participated with him in the robbery. Bock's FBI report showed that, contrary to Enloe's testimony, he had in fact named these two other individuals before his implication of the charged defendants.

But this conflict between Enloe's testimony and the FBI report was fully brought out and made the subject of vigorous cross-examination by appellant's counsel. Further, the testimony of Bock was that Enloe at first denied any connection with the robbery; that he later admitted his own participation therein and named the two other individuals as his accomplices; that Bock then told Enloe that the FBI had made sufficient check to be satisfied that these two individuals, both of whom were dead at the time Enloe named them, had not been involved in the robbery; and that Enloe had thereupon named himself and the other charged defendants, including appellant, as the ones who had committed the robbery. Engaging in repetition—here again the aspects of the situation had been fully brought out before the jury so that it was in a position to resolve whether Enloe was merely mistaken in his recollection or was being untruthful in his denial, and whether the credibility of his substantive testimony should be regarded as affected in any way thereby. As in the case of the testimony previously discussed, there was involved nothing more than a situation of traditional jury province, competence and function. This was fair trial operating normally without any subversion of its capacity to function. It was not a situation of pollution of institutional channel, which had been without means of detection and evaluation,

and the principles set out above are without any application to it.

■ Appellant's final contention was that the Government had suppressed evidence favorable to him which it owed a duty to have disclosed to him or to have brought out on the trial, and that his conviction therefore rested on a violation of due process.

Another defendant in the case, named Hall, had, like Enloe, pleaded guilty and testified to appellant's participation in the robbery. A woman who had been living with Hall, named Garger, also gave testimony that was circumstantially corroborative of appellant's guilt. In their general narration of what had occurred, both of them told of their having taken two duffle bags containing burglar tools, the morning after the robbery was committed, to the foot of Market Street in St. Louis, Missouri, where Hall dumped them into the Mississippi River. After the trial, appellant learned that the Government had hired divers to search for the bags of tools, but that they were not found. He argues that the failure to have disclosed this fact to him or to have brought it out on the trial was such a suppression of evidence as to deprive him of a fair trial and so to violate due process.

Appellant was not claimed to have either owned, furnished or possessed any of the tools used in the robbery, or to have had any part in the disposition made of them, so that Hall's and Garger's testimony as to the subsequent dumping engaged in by them could have no probative capacity against him, nor could the fact of whether they ever were found and retrieved have any probative capacity in his favor.

But he argues that the fact that the tools were not found discredited the testimony of Hall and Garger as to their having been dumped in the Mississippi River, and that the discrediting of the testimony of these witnesses in this respect would be sufficient to raise a question as to the credibility of their substantive testimony against him.

If the fact that the tools had been searched for and not found could have any impeaching capacity against Hall's and Garger's testimony, it is clear that, as newly discovered evidence, such impeaching capacity would not have constituted an adequate basis for the seeking or granting of a new trial under Rule 33, Fed.Rules of Crim.Procedure, 18 U.S.C.A. Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1; Johnson v. United States, 8 Cir., 32 F.2d 127, 130; Connelly v. United States, 8 Cir., 271 F.2d 333, 335.

Viewing, however, the evidence itself, the fact that a search made for the two bags of tools in the Mississippi River, not engaged in until a year or more after the alleged dumping, had been without success, would seem to have but slight or remote impeaching capacity on whether the dumping had occurred. Such lack of immediacy and such possibility of play of other factors were involved that, if evidence as to the attempted search had been sought to be offered on the trial, we think it clear that the court could properly have refused to admit it. Thus, the Government's failure to have advised appellant of its attempted search cannot be claimed to be such a suppression of evidence as would violate due process by having deprived him of the fundamental character of a fair trial.

■ Of course, any suppression of evidence favorable to an accused, "where the evidence is material * * * to guilt", can constitute a violation of due process. Brady v. State of Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215. Evidence material to guilt is, we think, evidence which is of probative character on that question. As to evidence not of that character and having admissibility only for the purpose of impeachment or credibility attack, nondisclosure or suppression, to be violative of due process, would in our opinion, unless the situation is otherwise tainted, have to be of such inherent significance as to represent fundamental unfairness. Cf. Barbee v. Warden, Maryland Peni-

tentiary, 4 Cir., 331 F.2d 842; Ashley v. State of Texas, 5 Cir., 319 F.2d 80.

As we have indicated, the situation here is not of that nature.

Affirmed.