Johnson Kenneth EVANS, Appellant,

v.

Theodore JANING, Sheriff of Douglas County, Nebraska, et al., Appellees.

No. 73–1156.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1973.

Decided Dec. 28, 1973.

---

25. 298 F.Supp. at 267.

26. 300 F.Supp. 210, 214.

Martin A. Cannon, Omaha, Neb., for appellant.

Mel Kammerlohr, Asst. Atty. Gen., Lincoln, Neb., for appellees.

Before HEANEY, STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

In this appeal from the order of the District Court denying habeas corpus relief, Johnson Kenneth Evans asserts two constitutional challenges to the eyewitness identifications upon which his state robbery conviction depended: (1) that the eyewitness testimony was tainted by a prior uncounselled photographic display; and (2) that the state prejudiced his defense by failing to produce evidence favorable to the accused in the form of a police report showing one eyewitness had failed to identify a photograph of Evans. We uphold the order of the District Court and affirm.

On the morning of September 20, 1968, two men entered a small grocery store in Omaha, Nebraska, owned and operated by Arthur Haffke. Haffke and his son, Warren, were the only other persons in the store. The larger of the two men asked Arthur Haffke where the milk counter was located. Haffke, suspicious because the "big fellow" had whiskey on his breath, transferred a gun from beneath the counter to his pocket. After three to five minutes, during which Haffke observed the men carefully, they returned to the checkout stand. The larger man had a carton of milk and asked for a pack of cigarettes. When Haffke opened the cash register drawer, the big man pushed him against the wall and reached into the till; then both men fled. Haffke fired his pistol, wounding the smaller man, James Nathaniel Wright. The big man escaped.

Appellant Evans promptly became a suspect because of his friendship with Wright.[1] Four days after the robbery, Evans received word that the police wanted to talk to him about the robbery. He went to the police station "to find out what it was about." He was then arrested on the robbery charge.

On September 2, 1969, nearly one year later, Evans and Wright were jointly arraigned at a preliminary hearing at which Arthur Haffke identified Evans, a Negro, as one of the robbers. Questioned about prior identification of photographs, he testified that police officers had come to his store and had shown him "a whole bunch" of photographs and had asked him, "Is that man in here that pushed you?" Haffke testified that he indicated a color photograph of a man who had a yellow streak down the center of his hair was the same man, but the streak was not there at the time of the incident; he identified Evans "by his face." Haffke further testified that his recollection at the time of the hearing was independent of the photographs.[2]

Evans came to trial March 10, 1970, eighteen months after the robbery. The only evidence of Evans' participation was the positive in-court identification testimony of the two Haffkes. Neither expressed any doubt that Evans was the "big fellow" who had pushed Arthur Haffke, tapped the till, and escaped. Evans' defense was based on the testi-

1. The identification testimony of the two Haffkes was the only evidence tying Evans to the crime. Apparently, fingerprints were taken from the milk carton immediately following the robbery but the results, if any, were not introduced at the trial and do not appear in the record.

2. This testimony is more fully set forth in State v. Evans, 187 Neb. 474, 192 N.W.2d 145, at 148 (Neb.1971).

mony of his employer that Evans was at work at the time of the crime. Evans also presented his probation officer, Patrick Krell, who testified that prior to and after the robbery Evans had a yellow streak in his hair. Evans' testimony in his own behalf was consistent with that of his employer and Krell.

Both Haffkes were examined generally about the appearance of the "larger" robber, but neither was asked whether the robber had a yellow streak in his hair.[3] The existence of the photo display was not brought out at trial. Evans was found guilty by the jury and was sentenced to five to seven years.

Counsel for Evans on this appeal represented James Wright both in his criminal defense[4] and in a civil suit brought by Wright against Haffke based on injuries resulting from the shooting. During the civil proceedings in Wright v. Haffke, No. 613, District Court of Nebraska, Douglas County, a police report of Sergeant John B. Gallagher surfaced, and its contents are the subject matter of this appeal.

The police report, dated September 27, 1968, reads:

> I contacted HAFFKE, Art for the purpose of showing him mug photos.
>
> I first showed him four colored polaroid mug photos; Two of them being Evans, Kenneth, who's hair had a yellow streak in front. Haffke could not pick any one from this group of photos.
>
> I then showed Haffke three black & white regular mug photos: EVANS, OPD #68069; COLEMAN, OPD #46162 and GOODSON OPD #47187. Haffke immediately pointed to Evans, OPD #68069 stating that

this look [sic] like the man who pushed him away from his cash register and then reached into the cash drawer and took money out and ran out of the store. This photo of Evans was taken in 1967.

Haffke stated that on the day of the robbery Evans did not have any yellow streaks in his hair.

All photos held as evidence.

Evans' motion for a new trial, based in part on the police report, was denied. The Nebraska Supreme Court affirmed the lower court's order;[5] Evans then filed a habeas corpus petition in the United States District Court of Nebraska, which was denied by Judge Robert V. Denney; this appeal followed.

I

■ Appellant first attacks the photographic display because he was not at the time represented by counsel. That argument was recently laid to rest in United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), in which the Supreme Court expressly held that the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the government for the purpose of allowing a witness to attempt an identification of the suspect. See also United States v. Long, 449 F.2d 288 (8th Cir. 1971), cert. denied, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 247 (1973).

■ Next, appellant argues that Gallagher was unduly suggestive in his manner of presenting the photographs to Arthur Haffke. It is true that Evans' picture appeared in two of the four color photographs which were shown and in one of the black and white photographs

---

3. Arthur Haffke testified that the big man was bare headed, without comment on hair style or color. Warren Haffke, who had been at the meat counter and had a less advantageous view, thought the robber was wearing a hat.

4. Wright, whose trial followed Evans', was acquitted. Wright took the Fifth Amendment at Evans' trial but his preliminary hearing testimony was read to the jury.

Wright had testified that Evans was not the man with him in Haffke's store on September 20, 1968.

5. State v. Evans, supra. On the suppression issue, the court held there was no suppression or concealment, noting defense counsel's awareness of the photo display, and finding no significance in the failure of one of two identification witnesses to identify a photograph.

which were next exhibited to Haffke. There is no evidence that Gallagher intimated to Haffke which photograph was of the suspected robber. And it may well be argued that appellant's contention that Haffke failed to identify the color photographs of Evans is inconsistent with his contention that the display was unduly suggestive. In any event, an invalid photo display only taints an in-court identification where there is no independent basis for such identification. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In this case, Haffke's independent basis for identification was well established. We find no prejudice here.

## II

■ Appellant next contends that the failure to produce the police report deprived him of due process of law. A preliminary overview of the evolving law of favorable evidence will aid in focusing upon the specific challenge presented in this case. A prosecutor has a duty to disclose material evidence favorable to the accused. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This duty is mandated by the fairness requirement of the due process clause and is consistent with his general obligation to seek justice above victory. United States v. Hibler, 463 F.2d 455 (9th Cir. 1972). This duty of candor, while substantial, is not all encompassing. It neither requires full disclosure as in civil cases [6] nor permits a "combing of the prosecutors' files" in search of evidence possibly useful to the accused.[7] It has been limited to evidence favorable to the accused,[8] material to his guilt or punishment,[9] and evidence affecting the credibility of a key witness when his reliability may be determinative of guilt or innocence.[10] Unlike the exclusionary rule of *Mapp* and *Miranda,* the duty of disclosure enunciated in Brady v. Maryland is designed to assure the fundamental right to a fair trial rather than penalize law enforcement officers for conduct encroaching upon an accused's constitutional rights.[11] Suppression has consistently been used synonymously with nondisclosure.[12] Thus,

6. Moore v. Illinois, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972) ("We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case."); United States v. Brumley, 466 F.2d 911 (10th Cir. 1972), cert. denied, 412 U.S. 929, 93 S.Ct. 2755, 37 L.Ed.2d 156 (1973); United States v. Evanchik, 413 F.2d 950 (2d Cir. 1969); United States v. Harris, 409 F.2d 77 (4th Cir.), cert. denied, 396 U.S. 965, 90 S.Ct. 443, 24 L.Ed.2d 430 (1969); United States v. Avella, 395 F.2d 762 (3d Cir.), cert. denied, 393 U.S. 837, 89 S.Ct. 113, 21 L.Ed.2d 108 (1968).

7. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); United States v. Keogh, 391 F.2d 138 (2d Cir. 1968).

8. United States v. Deutsch, 475 F.2d 55 (5th Cir. 1973); United States v. Hauff, 473 F.2d 1350 (7th Cir.), cert. denied, 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed. 2d 972 (1973); cf. United States v. Achtenberg, 459 F.2d 91 (8th Cir.), cert. denied, 409 U.S. 932, 93 S.Ct. 229, 34 L.Ed.2d 187 (1972).

9. Moore v. Illinois, *supra*; United States v. Kahn, 472 F.2d 272 (2d Cir.), cert. denied, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973); Peterson v. United States, 411 F.2d 1074 (8th Cir.), cert. denied, 396 U.S. 920, 90 S.Ct. 247, 24 L.Ed.2d 199 (1969); Link v. United States, 352 F.2d 207 (8th Cir. 1965).

10. Giglio v. United States, *supra*; United States v. Deutsch, *supra*; United States v. Hibler, *supra*; Loraine v. United States, 396 F.2d 335 (9th Cir.), cert. denied, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968). *Cf.* Link v. United States, *supra*.

11. United States v. Hibler, *supra*; Clarke v. Burke, 440 F.2d 853 (7th Cir. 1971), cert. denied, 404 U.S. 1039, 92 S.Ct. 718, 30 L.Ed.2d 731 (1972); Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F.2d 287 (1966); Barbee v. Warden, Maryland Penitentiary, 331 F.2d 842 (4th Cir. 1964); United States v. Consolidated Laundries Corp., 291 F.2d 563 (2d Cir. 1961); United States ex rel. Thompson v. Dye, 221 F.2d 763 (3d Cir.), cert. denied, 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773 (1955).

12. United States v. Hibler, *supra*; Link v. United States, *supra*; United States ex rel. Thompson v. Dye, *supra*. *Cf.* Scalf v. Bennett, 408 F.2d 325 (8th Cir.), cert. denied, 396 U.S. 887, 90 S.Ct. 175, 24 L.Ed.2d 161 (1969); Walker v. Bishop, 408 F.2d 1378 (8th Cir. 1969).

while deliberate suppression might ease a defendant's burden of proving materiality,[13] the duty to disclose is measured without regard for the good faith or bad faith of the prosecution.[14]

A three-pronged test to be applied in nondisclosure cases was announced in Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562 (1972), wherein the Supreme Court stated:

> The heart of the holding in Brady is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence.

408 U.S. at 794–795, 92 S.Ct. at 2568. We therefore must test appellant's claim of due process violation by the same considerations.

### (A.) *Was There Suppression?*

The first question is simply whether at or before the trial the prosecutor knew or should have known of the report while defense counsel was unaware of its existence.[15] County Attorney Francis R. Pane stated on April 20, 1971 that he was aware of Sergeant Gallagher's report prior to the trial, that he had seen the photographs referred to in the report, that he never advised defense counsel of the existence or contents of the report, and that he had no reason to believe that defense counsel had any knowledge of the existence of the report.

Assistant Public Defender, Lynn R. Carey, Jr., one of the attorneys who conducted Evans' defense, testified at the same time that he had requested to see the police reports on Evans,[16] had seen at least some of them, but had never seen Sergeant Gallagher's report before April, 1971. On this undisputed record, it is apparent that Gallagher's report was not disclosed within the meaning of *Brady.*

The Supreme Court has always discussed the disclosure duty in terms of a "defense production request",[17] without, however, holding that a failure to request is in all circumstances a waiver of the right. On the contrary, it has held that where the suppression is deliberate or the nondisclosure shocks the conscience of the court, a defense request is not necessary. Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967). The record in this case reveals no deliberate suppression or shocking nondisclosure. It does reveal that the prosecutor knew of Gallagher's report and did not disclose it. In such cases, the Second Circuit has concluded the failure of a defendant to request production does not excuse the prosecution from coming forward, but rather imposes upon the defendant a higher standard of materiality. United States v. Keogh, 391 F.2d 138 (2d Cir. 1968). In an opinion written by Judge Friendly, the court said:

> There remains a third category of cases—where the suppression was not deliberate in either of the senses we have included and no request was made, but where hindsight discloses that the defense could have put the evidence to not insignificant use. While

13. Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); United States v. Kahn, *supra*; United States v. Mele, 462 F.2d 918 (2d Cir. 1972); United States v. Keogh, *supra*; Link v. United States, *supra*.

14. Brady v. Maryland, *supra*, 373 U.S. at 87, 83 S.Ct. 1194.

15. United States v. Ruggiero, 472 F.2d 599 (2d Cir.), cert. denied, 412 U.S. 939, 93 S. Ct. 2772, 37 L.Ed.2d 398 (1973). *Cf.* Wil-

liams v. Wolff, 473 F.2d 1049 (8th Cir. 1973).

16. No allegation has been made that the state's attorney failed to disclose Gallagher's report in bad faith and the record justifies none. Mr. Carey's statement implies that full and open disclosure was the standard practice between the Public Defender's office and the Douglas County Attorney's office.

17. *See* Moore v. Illinois, *supra*.

we do not dispute that relief may sometimes be granted even in such cases, the standard of materiality must be considerably higher.

\* \* \* \* \* \*

The request cases also stand on a special footing; the prosecution knows of the defense's interest and, if it has failed to honor this even in good faith, it has only itself to blame. Failure to appreciate the use to which the defense could place evidence in the prosecution's hands, or forgetfulness that it exists when a development in the trial has given it a new importance, are quite different. Since this must happen to the most scrupulous prosecutors and the issue of deterrence scarcely arises, the problems of the courts and the wider interests of society unite to require a substantially higher probability that disclosure of the evidence to the defense would have altered the result. To invalidate convictions in such cases because a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict would create unbearable burdens and uncertainties.

391 F.2d at 147–48.

Our court has intimated a similar approach where no formal request for production was made. In Williams v. Wolff, 473 F.2d 1049 (8th Cir. 1973), we held that there was no duty to inform the defense of the possible testimony of a witness which would not be exculpatory, impeaching or inconsistent with the state's theory of guilt. We said:

> In so holding we follow the teachings of Brady v. Maryland, *supra*, but without the suggested expansion that the constitutional duty there enunciated encompasses as well any evidence which might conceivably aid the defense in the preparation of its case.

473 F.2d at 1054.

■ Thus, for purposes of Moore v. Illinois, *supra*, we hold that the evidence was suppressed by knowing nondisclosure, deferring to our discussion of materiality, *infra*, the effect of Evans' failure to request production.[18]

(B.) *Was the Evidence Favorable to the Defendant?*

Without considering the degree of favorability, we have no difficulty in finding that a police report which states that the eyewitness failed to identify a photograph of the defendant would be potentially useful to the defendant and therefore favorable to his defense. In United States v. Ash, *supra*, the Supreme Court observed:

> Selection of the picture of a person other than the accused, or the inability of a witness to make any selection, will be useful to the defense in precisely the same manner that the selection of a picture of the defendant would be useful to the prosecution.

413 U.S. at 318, 93 S.Ct. at 2578.

The burden of demonstrating that the evidence was of a favorable nature is thus a very slight one. The more crucial

---

18. The fact that photographs had been displayed to Haffke was disclosed to the defense at the preliminary hearing. The police officer conducting the photo display was not named and the existence of a report on the display was not revealed by the hearing. These were proper matters for inquiry by defense counsel, and nothing in the record supports the inference that the prosecution would have withheld the existence of the police report had defense counsel made appropriate inquiry. The prosecutor's duty to correct false or mistaken testimony is well established. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 238 (1959). Failure of defense counsel to flush out such misinformation, if known to be such by the prosecutor, would not excuse the prosecutor's nondisclosure. United States v. Poole, 379 F.2d 645 (7th Cir. 1967). On the record of this case, neither party should be penalized for simply failing to disclose on the one hand or simply failing to request disclosure on the other without first assessing the materiality of the undisclosed evidence. *See* Barbee v. Warden, Maryland Penitentiary, *supra*, 331 F.2d at 345.

burden is the third test in *Moore,* the materiality of the evidence.

### (C.) *Was the Evidence Sufficiently Material?*

The undisclosed police report states that Sergeant Gallagher exhibited the photographs to Arthur Haffke seven days after the robbery. Four photographs were in color, two of which were of Evans, clearly showing a yellow streak in his hair; three were in black and white, one being of Evans without the yellow streak. The report states that Haffke could not identify the robber from the color photographs, but picked out the black and white picture of Evans as looking like the robber.

Haffke consistently asserted that the man who robbed him did not have a yellow streak in his hair. At the preliminary hearing, Haffke testified that he had identified the color photograph of Evans but that the streak of yellow was not in Evans' hair at the time of the robbery. Haffke testified both at the preliminary hearing and at the trial that Evans was the "big" robber. Warren Haffke, who was never shown a photo and was not called at the preliminary hearing, also testified at trial that Evans was the other robber.

This was an eyewitness case. At the trial, defense counsel did not cross-examine either of the Haffkes about the yellow streak. Arthur Haffke testified at the preliminary hearing that his recollection was independent of the photographs. Thus, the sole purpose for which the police report might have been used in evidence would have been to impeach the testimony of the key witness.

In Link v. United States, 352 F.2d 209 (8th Cir. 1965), we held that suppressed *impeachment evidence* requires a higher standard of materiality than would be imposed for evidence directly relevant to guilt.

Of course, any suppression of evidence favorable to an accused, 'where the evidence is material . . . to guilt', can constitute a violation of due process. . . . Evidence material to guilt is, we think, evidence which is of probative character on that question. As to evidence not of that character and having admissibility only for the purpose of impeachment or credibility attack, nondisclosure or suppression, to be violative of due process, would in our opinion, unless the situation is otherwise tainted, have to be of such inherent significance as to represent fundamental unfairness.

352 F.2d at 212.

In United States v. Kahn, 472 F.2d 272, 287 (2d Cir.), cert. denied, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973), the court said:

If the government's nondisclosure is merely inadvertent, and does not involve evidence whose high value to the defense could not have escaped notice, . . . a somewhat stronger burden is put on the defendant. While the movant is still not required to show the probability of a different verdict upon retrial, setting aside a conviction is only called for when there is "a significant chance that this added item, developed by skilled counsel as it would have been could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction." [19]

19. The standard of materiality has varied greatly. Where the nondisclosed evidence is patently immaterial, it has been held outside the reach of *Brady,* as in Peterson v. United States, 411 F.2d 1074 (8th Cir.), cert. denied, 396 U.S. 920, 90 S.Ct. 247, 24 L.Ed.2d 199 (1969), or else the harmless error standard has been applied. United States v. Davila-Nater, 474 F.2d 270 (5th Cir. 1973). Levin v. Clark, 133 U.S.App.D.C. 6, 408 F.2d 1209, 1212 (1967) stated the test in terms of "whether the evidence might have led the jury to entertain a reasonable doubt" about defendant's guilt. Perhaps the most realistic standard is simply whether the nondisclosure prejudiced the defense. Simos v. Gray, 356 F.Supp. 265 (E.D.Wis.1973) ; *cf.* United States v. Brumley, 466 F.2d 911 (10th Cir. 1972), cert. denied, 412 U.S. 929, 93 S.Ct. 2755, 37 L.Ed.2d 156 (1973) ; Kyle v. United States, 297 F.2d 507 (2d Cir. 1961), cert. denied, 377 U.S. 909, 84 S.Ct. 1170, 12 L.Ed. 2d 179 (1964). *See* Comment, 40 U.Chi.L. Rev. 112 (1972).

Warren Haffke, who was not shown the photographs, positively identified Evans. We do not find in this case that "significant chance" that the police report would induce a reasonable doubt in the jurors' minds; nor do we find, under our own standard, that nondisclosure of the impeachment evidence was of such inherent significance as to represent fundamental unfairness. Link v. United States, *supra*, 352 F.2d at 212.

Before coming here, the issues presented in this case were considered by three courts, none of whom found prejudice in the failure to disclose the police report. We conclude that on this record such failure did not deprive Evans of due process of law.

Affirmed.