**UNITED STATES of America, Appellee,**

v.

**Junior Wayne McCOLGIN, Appellant.**

**No. 75–1683.**

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1976.

Decided May 17, 1976.

---

Michael B. Stern, Clayton, Mo., for appellant.

David D. Noce, Asst. U. S. Atty., St. Louis, Mo., for appellee; Donald J. Stohr, U. S. Atty., St. Louis, Mo., on the brief.

Before ROSS, STEPHENSON and HENLEY, Circuit Judges.

STEPHENSON, Circuit Judge.

Defendant appeals from a jury conviction on Count I of a two-count indictment charging that on or about November 6,

1974, he passed a falsely made and counterfeited obligation of the United States, a $20 Federal Reserve note. 18 U.S.C. § 472. He alleges: (1) insufficiency of the evidence; (2) denial of a fair trial on account of the prejudicial questioning of two government witnesses on the part of the trial court;[1] and (3) abuse of discretion by the trial court in denying appellant's motion for a new trial on the ground of newly discovered evidence.[2] We affirm.

Count I charged the passing of the counterfeit note at the Spot Tavern, St. Louis, Missouri. Count II, upon which the jury acquitted, charged the passing of a similar counterfeit note at the Star Service Station on the same date.

The principal evidence against the defendant consisted of: the testimony of an accomplice regarding defendant's procurement of the counterfeit note about November 1, 1974; the testimony of Georgia Reagan, barmaid at the Spot Tavern, that she received the $20 note from defendant on November 3, 1974; the testimony of Roy Glosick, manager of the Spot Tavern, that he saw defendant in the tavern on the evening of November 3; the signed statement of defendant given to Special Agent William Noonan of the United States Secret Service, that defendant passed two counterfeit $20 bills, one at the Spot Tavern and one at the Star Service Station on or about November 6, 1974. It was stipulated that both $20 bills were counterfeit.

Appellant's challenge to the sufficiency of the evidence to convict on Count I is premised largely on the basis that the acquittal on Count II indicates that the jury relied strongly on the testimony of Roy Glosick and Georgia Reagan of the Spot Tavern and gave little weight to defendant's confession and other corroborating evidence which applied equally to Count II upon which the jury acquitted.

In reviewing the sufficiency of the evidence we, of course, apply the well established rule that "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), *cited with approval in Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590, 624 (1974). Likewise, we must accept as established all reasonable inferences from the evidence that tend to support the action of the jury. *United States v. Overshon*, 494 F.2d 894, 896 (8th Cir.), *cert. denied*, 419 U.S. 853, 878, 95 S.Ct. 96, 142, 42 L.Ed.2d 85, 118 (1974). It is not within our province to speculate as to the reasons for jury conviction on one count as opposed to another. It may have been a compromise, *United States v. Dotterweich*, 320 U.S. 277, 279, 64 S.Ct. 134, 135, 88 L.Ed. 48, 50 (1943); a matter of lenity, *Dunn v. United States*, 284 U.S. 391, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 358 (1932); or, as appellant suggests, at least partial reliance on the testimony of witnesses Glosick and Reagan. In any event our sole duty is to determine whether there is substantial evidence to support the verdict of guilt on Count I.

On November 1, 1974, accomplice Lacy took appellant to a tavern where appellant paid an unnamed individual $5 for two $20 counterfeit bills, the backs of which were light green. On November 3, Georgia Reagan waited on appellant in the Spot Tavern and recalled receiving a $20 bill from appellant which looked like it had been washed—it had a "faded out green" color. The following day, November 4, when Roy Glosick, tavern manager, opened a new bank account he learned that the faded bill was counterfeit. On January 15, 1975, appellant after being warned of his *Miranda* rights signed a written waiver of

1. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

2. During the course of this appeal upon application of appellant this cause was remanded to the district court for the limited purpose of permitting appellant to file a motion for a new trial on the ground of newly discovered evidence and for the trial court's consideration thereof. The trial court's order denying said motion was filed with this court and is now before us.

his rights including the right to counsel and signed a two-page written statement in the presence of Special Agents Noonan and Watson. In the statement appellant recited that "on or about November 4, 1974," he received two $20 counterfeit bills from Joe Lacy. The next day appellant and Lacy attempted to procure some more counterfeit $20 bills but were unsuccessful. Appellant concluded his written statement as follows:

> The next day, Joe Lacy went to work and we never again returned to Illinois. On this date, I got rid of the two counterfeit $20 bills, which Joe Lacy had given to me, passing one at the Spot Tavern and one at the Star Service Station on South 7th.
>
> I have read this statement, consisting of two pages, and it is true and correct, to the best of my knowledge.
>
> /s/ Junior W. McColgin
> JUNIOR WAYNE McCOLGIN
> Date: January 15, 1975

Appellant did not testify. He offered the testimony of his wife, Edith McColgin. She testified in substance that on November 6, 1974, she and her husband were in the Spot Tavern; they were accompanied by friends Donald Littlefield and Beverly Drake; the barmaid who waited on them was Gracie Maddox; she noted Georgia Reagan's presence in the tavern but she never waited on them or came to their table.

■ We are satisfied from our examination of the record that the evidence of guilt is overwhelming. The confession was amply corroborated. *Opper v. United States*, 348 U.S. 84, 93, 95 S.Ct. 158, 164, 99 L.Ed. 101, 108 (1954); *Smith v. United States*, 348 U.S. 147, 156, 75 S.Ct. 194, 199, 99 L.Ed. 192, 200 (1954). There were discrepancies in dates, i. e., appellant in his confession indicates the bills were passed on November 6, whereas Glosick and Ms Reagan indicate it was November 3, the night before the bank deposit was made on November 4. Discrepancies in testimony such as dates are not uncommon. It was for the jury to determine the facts. We find the insufficiency contention to be without merit.

■ Appellant's charge that he was denied a fair trial because of prejudicial questioning of two government witnesses by Judge Regan relates to two incidents that occurred during the trial. After counsel had completed their examination of Agent Noonan and before he left the stand, the court requested him to read the second to last paragraph of defendant's statement (*supra*, p. 4), and then inquired: Q. "Did he ever deny that he passed them at those two places?" A. "No, sir, he did not." We note that when the statement was originally read to the jury by Agent Noonan he omitted the words "twenty dollar." The other incident occurred in connection with the government's cross-examination of Mrs. McColgin.[3]

3. The questioning was as follows:

BY MR. NOCE [prosecutor]:

Q. You do recall being in the Spot Tavern on the 6th with your husband?

A. Not that particular date. We were there this one night in particular that Gracie and Georgia both had tended the bar because they normally don't do that. Not both of them *together*.

Q. Are you aware that there has been evidence offered in this case to the effect that your husband—or, that the Defendant did pass the two bills—one bill, excuse me—in the bar on around the early part of November?

A. I'm aware of it now. I wasn't then.

Q. And you're going to stick by your story that—

THE COURT: You don't know what night this bill was passed?

THE WITNESS: No, sir, I don't. I don't remember the night.

THE COURT: So if it was passed on the 2nd or 3rd, you don't know whether you were there or not?

MR. STERN [defense]: I'm going to object to that because you're asking her to comment either she knew what night the bill was passed or she did not know what night the bill was passed. That's an ultimate conclusion.

THE COURT: It certainly is. And you don't know when it was passed, do you?

MR. STERN: Or if it was passed.

THE WITNESS: No, I suppose not. I'm sorry I'm confused no, I didn't know the bills were passed.

THE COURT: Do you know when you were in there, what date it was?

THE WITNESS: Not exactly, no.

We view these incidents in light of all the testimony. In this context it appears that the trial court was merely attempting to clarify the witnesses' testimony.

One of the chief roles of the trial judge is to see that there is no misunderstanding of a witness's testimony. The judge has a duty to comprehend what a witness says as much as it is his duty to see that the witness communicates with the jury in an intelligible manner. A trial judge can do this in a fair and unbiased way. His attempt to do so should not be a basis of error. Where the testimony is confusing or not altogether clear the alleged "jeopardy" to one side caused by the clarification of a witness's statement is certainly outweighed by the desirability of factual understanding. The trial judge should strive toward verdicts of fact rather than verdicts of confusion.

*Ray v. United States*, 367 F.2d 258, 261 (8th Cir. 1966), *cert. denied*, 386 U.S. 913, 87 S.Ct. 863, 17 L.Ed.2d 785 (1967).

In the instant case there was a considerable delay between the date appellant's statement was given, January 15, 1975, and the date of his arrest on July 28. Agent Noonan testified with respect to other contacts he had with appellant during this period regarding another matter in which appellant was cooperating. It appears that the trial court sought to clarify whether there had been any change in his statement. In any event we find no prejudice.

In the second incident with respect to Mrs. McColgin's testimony, it appears that the court was attempting to clarify what the witness had said in answer to the first question she answered on cross-examination—that she did not know the date when she visited the Spot Tavern with her husband. Any inference in the court's questioning that the bill was passed by the defendant was mitigated by the questions of defense counsel. In addition there was no real dispute that a counterfeit bill was passed at the tavern by someone.

"The trial court commands the attention and respect of the jury. Great care must be exercised so as to avoid the appearance of advocacy for a particular party." *Scruggs v. United States*, 450 F.2d 359, 363 (8th Cir. 1971), *cert. denied*, 405 U.S. 1071, 92 S.Ct. 1521, 31 L.Ed.2d 804 (1972). We are satisfied from our examination of the record in its entirety that the trial judge fully appreciated his role of impartiality. The instructions to the jury carefully avoided any reflection of the court's view with respect to the weight of the evidence. We conclude that the court's questions were neither improper nor prejudicial when considered in the context of the record.

Appellant's motion for a new trial on the ground of newly discovered evidence alleged, *inter alia*, that:

2. At the time of Defendant's trial Defendant had attempted to locate one Grace Maddox whom the Defendant felt would testify favorably on behalf of Defendant but Defendant did not know the testimony said witness would give and was not successful in locating said witness. Since the date of Defendant's conviction, Defendant has located said witness who has agreed to testify on behalf of Defendant.

3. The essence of the testimony of Defendant's witness will directly contradict the testimony of Government witness Georgia Reagan who had testified that the Defendant had given her a counterfeit $20.00 Federal Reserve note.

The motion contends that Grace Maddox (now Grace Maddox Chambers) would have testified, as appears from her affidavit, that as a bar waitress at the Spot Tavern on the occasion in question she observed the arrival at about 7:30 p.m. of defendant, his wife, Littlefield and Beverly Drake, all of whom she knows personally; that they all sat at a table in the front of the tavern; that she was responsible for waiting on that table, that during the course of the evening she took drink orders from the group and collected the money in payment; that she

THE COURT: So you don't know whether it was the 6th or the 16th?

THE WITNESS: I guess you can say that.
THE COURT: Okay.

does not recall defendant or anyone else giving her a $20 bill which appeared to her to be unusual or strange; that defendant and those with him remained at the tavern until it closed at 1:30 a.m. the following morning; that Georgia Reagan was waiting on customers behind the bar; that she did not observe Ms Reagan wait on defendant or anyone else in his group; and that to the best of her knowledge she was the only one who waited on anyone in the group. It also appears from the affidavit of Grace Maddox Chambers that she quit working at the tavern in January 1975, remained in the St. Louis area, was unaware of any criminal proceedings against defendant until she heard that defendant's wife had been trying to contact her, and that she finally talked to Mrs. McColgin in October 1975.

■ There are five prerequisites which must ordinarily be met to justify the grant of a new trial on the ground of newly discovered evidence: "(1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved, and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal." *United States v. Pope*, 415 F.2d 685, 691 (8th Cir.), *cert. denied*, 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132 (1969).

■ We agree with the trial court that it is extremely doubtful whether the evidence qualifies as "newly discovered." Appellant's counsel questioned both Georgia Reagan and Mrs. McColgin about Grace Maddox's employment at the Spot Tavern on the day in question. Mrs. McColgin testified that their table was served by Grace Maddox and not by Georgia Reagan.

It is also questionable whether sufficient diligence was shown to secure the presence of Ms Maddox at trial. No subpoena for her was requested. Neither was a request made for a continuance to enable defendant to locate the witness.

The evidence was cumulative of the testimony of Mrs. McColgin and at most would tend to impeach the testimony of Ms Reagan. Donald Littlefield and Beverly Drake, who were with appellant and his wife, were not called. It would seem that their testimony would also corroborate the testimony of Mrs. McColgin. At least there was no showing to the contrary.

The showing made in support of the motion for new trial does not meet the requirements of *United States v. Pope, supra*, 415 F.2d at 691. The trial court did not abuse its discretion in denying the motion for new trial.

Affirmed.