Elroy SIMS, Petitioner,

v.

Lou V. BREWER, Warden of the Iowa State Penitentiary, Respondent.

Civ. No. 76–138–2.

United States District Court, S. D. Iowa, C. D.

April 6, 1977.

Robert H. Laden, of Hyland & Laden, P. C., Des Moines, Iowa, for petitioner.

Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, for respondent.

## MEMORANDUM AND ORDER

HANSON, Chief Judge.

This habeas corpus action raises issues of prosecutorial suppression of evidence, newly discovered evidence, and effective assistance of counsel. At petitioner's trial for first degree murder, he raised a defense of intoxication to which the first two issues herein relate. Respondent has custody of petitioner, vesting jurisdiction in this Court pursuant to 28 U.S.C. § 2254(b).

On January 11, 1971, a jury in Black Hawk County District Court found petitioner guilty of murder pursuant to Section 690.1, Code of Iowa (1966). On March 9, 1971 the trial court overruled petitioner's motion for new trial and sentenced him to life imprisonment at the Iowa State Penitentiary, Fort Madison, Iowa. Subsequently, in January of 1975, that court further denied petitioner's application for post-conviction relief. In addition to hearing petitioner's appeal from denial of post-conviction relief, the Iowa Supreme Court granted petitioner leave to take a delayed appeal from his 1971 conviction and overruling of new trial motion, which arguments were heard simultaneously. On March 17, 1976 the Supreme Court affirmed petitioner's conviction and the denial of post-conviction relief. *State v. Sims*, 239 N.W.2d 550 (Iowa 1976). Petitioner was represented by different counsel at all stages of the foregoing proceedings.

This matter is presently before the Court by way of petitioner's *pro se* application for writ of habeas corpus, filed April 26, 1976, and respondent's return, filed May 27, 1976. Counsel has twice been appointed for petitioner. The Court ordered the parties to file briefs upon which they have submitted the case, since the facts material to this pending action are in the main undisputed. The Court briefly reviews those facts before considering petitioner's legal claims. *See Sims, supra.*

## I.

At approximately 2:00 p. m. on November 29, 1970, petitioner drove his common-law wife, Irene Smallwood, from his Waterloo, Iowa home where they lived to where she worked. He returned home by 3:00 p. m. and began drinking beer which was to continue, intermittently, until the early hours of November 30. During this period petitioner drank at least twenty cans of beer.

At 9:45 p. m. on November 29, petitioner left home to pick up Smallwood. They then went to a tavern, from which they left for home at 10:30 p. m. On the way home their truck rolled into a ditch alongside the road and became stuck. William Hutchison stopped to help them, and all three eventually proceeded to petitioner's home where they arrived after midnight.

At petitioner's home, Hutchison and petitioner began drinking beer and talking in Smallwood's presence. A disagreement developed between petitioner and Smallwood. She went to a bedroom, and petitioner walked toward the bedroom with a gun in his hand. Though the events immediately

thereafter are controverted, it is clear that a gun discharged, sending a bullet through the bedroom door which struck and fatally wounded Smallwood. Petitioner then left his home in his truck, driving east from Waterloo.

Shortly after 3:00 a. m., petitioner's truck ran out of gas near the residence of Mr. and Mrs. Bagby, just east of Raymond, Iowa. The Bagbys visited with petitioner in their home over pizza and beer until police officers arrested him at 5:00 a. m.

The police took petitioner to the police station where they questioned him and took a blood sample. While there, petitioner gave the police a statement and called his brother. The results of the blood test were admitted into evidence by stipulation at petitioner's trial. Said results established that petitioner had 246 mg. of alcohol per 100 ml. of blood at 6:50 a. m. on November 30, 1970.

At trial, petitioner asserted both that the shooting was accidental and that he was intoxicated at the time of the shooting. The testimony offered at trial on these assertions was in conflict, but the jury disbelieved both assertions. That conflicting testimony regarding the shooting's accidental nature included the following.

Hutchison, the only witness in the house during the incident between petitioner and Smallwood, testified that in response to an attempt by Smallwood to leave petitioner's home prior to the shooting, petitioner pulled a pistol from his coat, waived it toward Smallwood, "and said she wouldn't leave." Hutchison stated that Smallwood then returned to the bedroom, where petitioner soon followed. The gun discharged, said Hutchison, and petitioner stated "Did I shoot you?"

Petitioner, however testified he thought Smallwood returned to the bedroom to get ready for bed. He stated that when he approached the bedroom he stumbled walking down the hallway, his right arm struck his body, and the pistol accidentally discharged.

The testimony at trial produced even greater conflict regarding petitioner's degree of intoxication. As indicated above, petitioner's testimony showed that he drank more than twenty beers from 3:00 p. m. until the time of the shooting. He stated to the police that he "had a few beers on [his] chest." He testified "I was drinking pretty well and don't remember what happened." Petitioner's brother testified petitioner sounded drunk when calling from the stationhouse after his arrest. A medical examiner testified that a blood alcohol level of 100 mg. of alcohol per 100 ml. of blood, a level less than forty percent as high as petitioner's stipulated 246 mg. per 100 ml., would be an intoxicated state.

The preceding testimony was allegedly in conflict with testimony from Hutchison and Mrs. Bagby. Hutchison testified that petitioner had been drinking and showed the effects thereof, but that petitioner was not "completely intoxicated." When asked for a further explanation, Hutchison said of petitioner: "Well, he was still moving." Mrs. Bagby testified that petitioner acted tired and had bloodshot eyes. She also said that petitioner did not act intoxicated, but explained this by saying that when her husband became intoxicated he would spill his drink, drop a cigarette, or pass out.

Petitioner discovered two sources of evidence after trial which relate to his defense that he accidentally shot Smallwood while intoxicated. The first piece of evidence was a report of police officer Johnson which stated in part that petitioner appeared to be quite intoxicated while at the stationhouse. Petitioner now alleges the prosecution unconstitutionally failed to disclose that report to him at trial. When on the witness stand at trial, officer Johnson stated that he was testifying from the report, but neither defense counsel nor prosecutor questioned Johnson at trial about defendant's intoxication. Defense counsel did not ask to see the report until after trial, at which time its contents were revealed to him. Petitioner used the report in his post-conviction action. Johnson's observation of petitioner occurred near the times when the blood test was taken and when petitioner called his brother.

The second allegedly new source of evidence are the statements of Bruce Carpenter, Hutchison's roommate at the time of the shooting, whose testimony petitioner offered at the state post-conviction hearing. Carpenter had, after the incident, met petitioner in jail. Carpenter stated Hutchison had told him that petitioner was drinking heavily at the time of the shooting, and that the gun accidentally discharged when petitioner stumbled in the hallway.

## II.

Petitioner raises three claims for this Court's consideration: that the prosecutor's failure to disclose the police report violated petitioner's Fourteenth Amendment due process rights; that petitioner should be released because of newly discovered evidence that is material and could lead to acquittal or retrial; that petitioner should be released because his court-appointed counsel rendered ineffective assistance.

### A. Failure to Disclose Evidence

For his due process claim concerning the prosecutor's failure to disclose officer Johnson's report, petitioner relies upon *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963):

> . . . [T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.

In commenting upon *Brady*, the Supreme Court in *Moore v. Illinois*, 408 U.S. 786, 794–95, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972) enunciated a three-part test for due process violations through suppression: "(a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence."

■ The Court concludes that under the *Moore* test, the prosecutor's failure to produce Johnson's report did not violate due process. Though the report's existence had been testified to at trial by officer Johnson, it was not requested by petitioner until he commenced his post-conviction action. Neither the prosecutor nor defense counsel questioned Johnson concerning petitioner's intoxication. The prosecutor did put officer Johnson on the stand where he revealed the existence of and testified from his report. Such conduct by the prosecution can scarcely be characterized as "suppression by the prosecution," and defense counsel's actions clearly did not amount to "a request by the defense." *See Moore, supra.* Suppose however, petitioner could surmount the first of the *Moore* requirements by labelling the prosecutor's conduct as a "failure to disclose" and asserting that such failure alone amounted to a denial of due process as in *Evans v. Janing*, 489 F.2d 470 (8th Cir. 1973), and *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967). Even so, the facts at bar cannot satisfy standards announced for nondisclosed evidence under *Moore's* other two requirements for situations where no defense request for production was made at trial. *See, e. g., Evans.*

The Court finds, pursuant to *Evans*, that the nondisclosed evidence was merely cumulative in light of stronger, contemporaneous evidence introduced at trial. The witnesses at trial differed not on whether petitioner had been drinking heavily or was showing the effects thereof, but rather only on whether petitioner was "intoxicated." The most concrete evidence available, stipulated by the parties at trial, was that of the medical examiner, to the effect that petitioner's blood alcohol level was more than twice as high as the minimum level for intoxication. The reading underlying that testimony was taken near the time of officer Johnson's observation, making Johnson's statement cumulative. Further, petitioner's brother testified that petitioner sounded intoxicated over the phone at a time near Johnson's observation. In light of the relatively weak, cumulative nature of the allegedly nondisclosed evidence, the Court holds that the nondisclosure does not even satisfy the minimal standard of *Evans*, 489 F.2d, at 477, n. 19, that "the nondisclosure prejudiced the defense."

*B. Newly Discovered Evidence*

 Petitioner offers a standard for evaluating newly discovered evidence which the Court finds controlling.

(1) the evidence must be in fact newly discovered, that is discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved, and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal [Authorities omitted]. *United States v. McColgin*, 535 F.2d 471, 476 (8th Cir. 1976); *see also United States v. Carter*, 549 F.2d 1164 (8th Cir. 1977).

The new evidence at issue, Bruce Carpenter's testimony that his roommate, William Hutchison, told him that petitioner had been drinking heavily and had shot his wife accidentally, falls far short of the "cumulative or impeaching" and "would probably produce an acquittal" standards of *McColgin.* Even if admitted over hearsay objections, both the drinking and accidental shooting evidence would be cumulative, in that others have testified to the same effect. Similarly, both would only be useful to impeach Hutchison, not as independent evidence, on a theory similar to the use of prior inconsistent statements. Further, the Court must observe that such evidence is simply too weak and suspect to "produce an acquittal."

*C. Ineffective Assistance of Counsel*

 Petitioner raised his ineffective assistance of counsel claim during his postconviction relief action in the Black Hawk County District Court but, as shown by respondent's uncontroverted allegation, he in no way presented that claim to the Iowa Supreme Court on appeal. The State has failed to carry its burden of showing that petitioner's non-presentation of his counsel claim was a considered choice amounting to deliberate bypass as enunciated in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068,

10 L.Ed.2d 148 (1963); *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); and *Wilwording v. Swenson*, 502 F.2d 844 (8th Cir. 1974). Neither has petitioner exhausted his state remedies as to this claim as required by 28 U.S.C. § 2254(b). *See Tyler v. Swenson*, 527 F.2d 877 (8th Cir. 1976). The Court makes no judgment as to the merits of this claim, which must be pursued in the state courts before it can receive federal consideration.

Accordingly, for the reasons heretofore stated,

IT IS HEREBY ORDERED that petitioner's application for habeas corpus relief is denied.